MACAULEY BROTHERS *vs.* PATRICK TIERNEY *et als.*

An association of master plumbers, in order to free themselves from the competition of those who were not members, sent notices to wholesale dealers in plumbers' supplies not to sell to others than members of the association under the penalty of a withdrawal of the latter's patronage. The wholesale dealers thereupon refused to sell to non-members who were in consequence unable to purchase supplies from wholesale dealers in this State and from other wholesale dealers in the United States.

*Held*, that the sending of the notices did not violate any legal rights of the non-members, and afforded no ground for relief in equity by injunction.

To maintain a bill in equity on the ground of conspiracy, it must appear that the object relied on as the basis of the conspiracy, or the means adopted for its accomplishment were unlawful.

BILL IN EQUITY for an injunction.

*October* 28, 1895. MATTESON, C. J. The complainants are master plumbers engaged in the business of plumbing. In the transaction of their business they have been accustomed, and are obliged, to purchase from time to time materials from wholesale dealers in Rhode Island and other parts of the United States, and, among others, from L. H. Tillinghast & Co., of Providence, who with the New England Supply Co. are the only wholesale dealers in plumbing materials in this State.

The respondents are also master plumbers and officers and members of the Providence Master Plumbers Association, a voluntary association affiliated with the National Association of Master Plumbers of the United States of America.

The latter association, on June 26, 1894, at Baltimore, in convention assembled, adopted resolutions that they would withdraw their patronage from any firm manufacturing or dealing in plumbing material selling to others than master plumbers ; that the masters should demand of manufacturers and wholesale dealers in plumbing material to sell goods to none but master plumbers ; that the association should keep a record of all journeymen and plumbers who place in buildings plumbing material bought by consumers of manufacturers or dealers ; that a committee be. appointed by the association in every State and county for the purpose of reporting to the proper officers, at its head in the State, any violations of these resolutions ; that the convention urge upon the association to perfect and adopt a uniform system of protection for the trade over their entire jurisdiction. Subsequently a resolution of amendment was adopted, at St. Louis, that the interpretation of the resolutions be left in the hands of the Executive Committee with power. Still later a resolution was adopted at Washington "that it is the sense of this convention that in the future the interpretation of the term of 'master plumber,' as set forth in the above resolutions, to entitle him to purchase plumbing material, be.construed to mean master plumbers that have qualified under State or local enactments where such exist."

It is alleged by the complainants that the interpretation put by the Executive Committee of the National Association on these resolutions is that those only are to be regarded as master plumbers who are members of the National Association, or members of the several local associations affiliated with the National Association ; that the complainants have been informed by various wholesale dealers in plumbing materials in the United States outside of this State that they will not sell them supplies unless they shall join the Providence Master Plumbers Association, and that these dealers are forced to refuse to sell them supplies because of the resolutions referred to and the interpretation put upon them by the Executive Committee of the National Association, and because of the action of the Providence Master Plumbers

Association in causing such dealers to be notified not to sell to the complainants under the penalty, in case of their continuing to do so, of not selling to any member of the association; that the Providence Master Plumbers Association, acting through the respondents, has issued notice to L. H. Tillinghast & Co. and the New England Supply Co. to sell supplies to none but members of the association, and that in consequence of these notices these wholesale dealers have notified the complainants and other master plumbers that they will not sell plumbing materials to plumbers not members of the Master Plumbers Associations in the places in which they do a plumbing business, or members of the National Association; and that since the date limited in the notices these dealers have refused to sell to the complainants, and that they have been unable to purchase supplies from them and from other wholesale dealers in the United States because they are not members of the Providence Master Plumbers Association.

The bill charges that the Providence Master Plumbers Association and the National Association have conspired together to prevent the complainants from buying supplies anywhere in the United States, and utterly to ruin their business, unless they will submit to the conditions of membership in and become members of the Providence Master Plumbers Association; avers that the business of the complainants will be irremediably ruined unless the respondents are enjoined from further action and are compelled to rescind the action which they have already taken, and prays that the respondents may be directed to rescind the notices given and all orders and requests, both oral and written, to any and all dealers in plumbers' supplies, not to trade with such dealers unless they shall refuse to sell supplies to any but members of such associations, and to rescind and withdraw any and all orders and requests to the National Association to prevent wholesale dealers outside of the State of Rhode Island from selling supplies to the complainants, and that the respondents may be enjoined from all further interference with the complainants by notifying such dealers not to sell

to them, or by further requests to said National Association to prevent them from buying supplies anywhere in the United States. Testimony has been submitted by the complainants tending to prove the allegations of the bill. Assuming that the allegations are fully sustained by the proof, have the complainants made a case entitling them to relief? We think not.

The complainants proceed on the theory that they are entitled to protection in the legitimate exercise of their business; that the sending of the notices to wholesale dealers not to sell supplies to plumbers not members of the association, under the penalty, expressed in some instances and implied in others, of the withdrawal of the patronage of the members of the associations in case of a failure to comply, was unlawful, because it was intended injuriously to affect the plumbers not members of the association in the conduct of their business, and must necessarily have that effect. It is doubtless true, speaking generally, that no one has a right intentionally to do an act with the intent to injure another in his business. Injury, however, in its legal sense, means damage resulting from a violation of a legal right. It is this violation of a legal right which renders the act wrongful in the eye of the law and makes it actionable. If, therefore, there is a legal excuse for the act it is not wrongful, even though damage may result from its performance. The cause and excuse for the sending of the notices, it is evident, was a selfish desire on the part of the members of the association to rid themselves of the competition of those not members, with a view to increasing the profits of their own business. The question, then, resolves itself into this: Was the desire to free themselves from competition a sufficient excuse in legal contemplation for the sending of the notices?

We think the question must receive an affirmative answer. Competition, it has been said, is the life of trade. Every act done by a trader for the purpose of diverting trade from a rival and attracting it to himself is an act intentionally done and, in so far as it is successful, to the injury of the rival in his business, since to that extent it lessens his gains and profits. To hold such an act wrongful and illegal would be

to stifle competition. Trade should be free and unrestricted; and hence every trader is left to conduct his business in his own way, and cannot be held accountable to a rival who suffers a loss of profits by anything he may do, so long as the methods he employs are not of the class of which fraud, misrepresentation, intimidation, coercion, obstruction or molestation of the rival or his servants or workmen, and the procurement of violation of contractural relations, are instances. A leading and well considered case on this subject was the *Mogul Steamship Co.* v. *McGregor*, L. R. 23 Q. B. 598; L. R. (1892) App. Cas. 25. In this case the defendants, who were ship-owners, had formed a league for the purpose of keeping in their own hands the control of the tea carrying trade between London and China, and for the purpose of driving the plaintiff and other competing ship-owners from the field. The acts complained of as unlawful by which the defendants sought to accomplish their purpose were : (1) The offer to local shippers and other agents of a benefit by way of rebate if they would not deal with the plaintiffs, which was to be lost if this condition was not fulfilled; (2) the sending of special ships to Hankow, in the hope by competition to deprive the plaintiff's vessels of profitable freight; (3) the offer at Hankow of freights at so low a rate as not to repay the ship-owner for his adventure, in order to smash freights and frighten the plaintiff from the field; (4) pressure put on their own agents to induce them to ship only by the defendants' vessels and not by the plaintiff's. The plaintiff alleged that the league was a conspiracy and claimed damages and an injunction against a continuance of the alleged unlawful acts. It was held that since the acts of the defendants were not in themselves unlawful, and were done by them with the lawful object of protecting and extending their own trade and increasing their profits, and that as they had employed no unlawful means, the plaintiff had no cause of action. Bowen, L. J., remarks, page 614, "His (the trader's) right to trade freely is a right which the law recognizes and encourages, but it is one which places him at no special disadvantage as compared with others. No man,

whether trader or not, can, however, justify damaging another in his commercial business by fraud or misrepresentation. Intimidation, obstruction, and molestation are forbidden ; so is the intentional procurement of the violation of individual rights, contractual or other, assuming always that there is no just cause for it. The intentional driving away of customers by show of violence : *Tarleton* v. *M'Gawley*, Peake N. P. C. 270 ; the obstruction of actors on the stage by preconcerted hissing : *Clifford* v. *Brandon*, 2 Camp. 358 ; *Gregory* v. *Brunswick*, 6 Man. & G. 205 ; the disturbance of wild fowl in decoys by the firing of guns : *Carrington* v. *Taylor*, 11 East, 571, and *Keeble* v. *Hickering*, 11 East, 574, *n;* the impeding or threatening servants or workmen : *Garret* v. *Taylor*, Cro. Jac. 567 ; the inducing persons under personal contracts to break their contracts : *Bowen* v. *Hall,* 6 Q. B. D. 333 ; *Lumley* v. *Gye*, 2 E. & B. 216 ; all are instances of such forbidden acts. But the defendants have been guilty of none of these acts. They have done nothing more against the plaintiffs than to pursue to the bitter end a war of competition waged in the interest of their own trade. To the argument that a competition so pursued ceases to have a just cause or excuse when there is ill will or a personal intention to harm, it is sufficient to reply . . . . . that there was here no personal intention to do any other or greater harm to the plaintiffs than such as was necessarily involved in the desire to attract to the defendants' ships the entire tea freights of the ports, a portion of which would otherwise have fallen to the plaintiff's share. I can find no authority for the doctrine that such a commercial motive deprives of 'just cause or excuse' acts done in the course of trade which would but for such motive be justifiable. So to hold would be to convert into an illegal motive the instinct of self-advancement and self-protection, which is the very incentive to all trade. To say that a man is to trade freely, but that he is to stop short at any act which is calculated to harm other tradesmen, and which is designed to attract business to his own shop, would be a strange and impossible counsel of perfection."

The case at bar contains no element of the character of those enumerated by the Lord Justice which are forbidden by law, unless the threat of the withdrawal of patronage may be considered as amounting to coercion. We do not think, however, that such a threat can be regarded as coercive within a legal sense ; for, though coercion may be exerted by the application of moral as well as physical force, the moral force exerted by the threat was a lawful exercise by the members of the associations of their own rights, and not the exercise of a force violative of the rights of others as in the cases cited by the Lord Justice. It was perfectly competent for the members of the association, in the legitimate exercise of their own business to bestow their patronage on whomsoever they chose, and to annex any condition to the bestowal which they saw fit. The wholesale dealers were free to comply with the condition or not, as they saw fit. If they valued the patronage of the members of the associations more than that of the non-members, they would doubtless comply ; otherwise they would not.

Closely analogous to the case at bar was the recent case of *Bohm Mfg. Co.* v. *Hollis*, 54 Minn. 223. The plaintiff was a manufacturer and seller of lumber, having a large and profitable trade, both wholesale and retail, in Minnesota and the adjoining States. The defendants, comprising from twenty-five to fifty per cent. of the retail lumber dealers in the States referred to, many of whom were or had been customers of the plaintiff, formed an association under the name of the North Western Lumbermen's Association, for the protection of its members against sales by wholesale dealers and manufacturers to contractors and consumers, by which they mutually agreed that they would not deal with any manufacturer or wholesale dealer who should sell lumber directly to consumers not dealers at any point where a member of the association was carrying on a retail yard. The by-laws provided that any member of the association doing business in the town to which lumber thus sold by a manufacturer or wholesale dealer had been shipped should notify the secretary of the association, within thirty days after the

arrival of the shipment at its destination, who should there-
upon notify the manufacturer or wholesale dealer by whom
the shipment had been made that he had a claim against him
for ten per cent. of the value of such sale at the point of
shipment; that if the secretary should be unable to obtain
payment he should refer the matter to the directors, who
should hear and determine the claim; that if the manufac-
turer or dealer refused to abide by the decision of the directors,
it should be the duty of the secretary to immediately notify
the members of the association of the name of the manu-
facturer or dealer and that he refused to comply with the
rules of the association; that if any member continued to
deal with such manufacturer or wholesale dealer he should be
expelled from the association; that whenever the secretary
of the association should succeed in collecting any such claim,
the sum collected should be paid to the member or members,
in equal shares, doing business at the place of the sale.    The
plaintiff sold two bills of lumber directed to consumers or
contractors at points where members of the association were
engaged in business.    The secretary of the association, having
been informed of the fact, notified the plaintiff, in pursuance
of the provision of the by-laws, that he had a claim against
him for ten per cent. of the amount of the sales.    Consider-
able correspondence with reference to the matter ensued, in
which the plaintiff from time to time promised to adjust the
claim, but procrastinated and avoided doing so until finally
the secretary threatened unless the claim was immediately
settled to send the notice provided by the by-laws to all the
members of the association.    Thereupon the plaintiff brought
its suit for an injunction.    An *ex parte* injunction having
been granted, the defendants obtained an order for the com-
plainants to show cause why it should not be dissolved.    The
court refused to dissolve the injunction, but on appeal the
order continuing the injunction was reversed.    The court
says, " Now, when reduced to its ultimate analysis, all that
the retail lumber dealers in this case have done is to form an
association to protect themselves from sales by wholesale
dealers or manufacturers, directly to consumers or other non-

dealers at points where a member of the association is engaged in the retail business.   The means adopted to affect this object are simply these :   They agree among themselves that they will not deal with any wholesale dealer or manufacturer who sells directly to customers, not dealers, at a point where a member of the association is doing business, and provide for notice being given to all their members whenever a wholesale dealer or manufacturer makes any such sale. That is the head and front of defendants' offence.   It will be observed that defendants were not proposing to send notice to any one but members of the association.   There was no element of fraud, coercion, or intimidation, either towards the plaintiff or the members of the association.   True, the secretary, in accordance with section 3 of the by-laws, made a demand on plaintiff for ten per cent. on the amount of the two sales.   But this involved no element of coercion or intimidation, in the legal sense of those terms.   It was entirely optional with plaintiff whether it would pay or not.   If it valued the trade of the members of the association higher than that of non-dealers at the same points, it would probably conclude to pay ; otherwise not.   It cannot be claimed that the act of making this demand was actionable ; much less that it constituted any ground for an injunction ; and hence this matter may be laid entirely out of view.   Nor was any coercion proposed to be brought to bear on the members of the association to prevent them from trading with the plaintiff.   After they received the notice, they would be at entire liberty to trade with plaintiff or not, as they saw fit. By the provision of the by-laws, if they traded with the plaintiff they were liable to be ' expelled ;' but this simply meant to cease to be members.   It was wholly a matter of their own free choice which they preferred,—to trade with the plaintiff or to continue members of the association."   See also *Paine* v. *Western & Atlantic R. R. Co.*, 81 Tenn. 507, 514–519 ;   *Cote* v. *Murphy*, 159 Pa. St. 420, 421 ;   *Heywood* v. *Tillson*, 75 Me. 225, 233.

It only remains to notice the charge of conspiracy contained in the bill, upon which considerable stress has been laid as

though the fact that the action of the members of the associations was in pursuance of a combination entitled the complainants to relief. To maintain a bill on the ground of conspiracy, it is necessary that it should appear that the object relied on as the basis of the conspiracy, or the means used in accomplishing it, were unlawful. What a person may lawfully do a number of persons may unite with him in doing without rendering themselves liable to the charge of conspiracy, provided the means employed be not unlawful. The object of the members of the association was to free themselves from the competition of those not members, which, as we have seen, is not unlawful. The means taken to accomplish that object were the agreement among themselves not to deal with wholesale dealers who sold to those not members of the associations, and the sending of notices to that end to the wholesalers. This, as we have also seen, was not unlawful. Hence, it follows that, as the object of the combination between the members of the associations was not unlawful, nor the means adopted for its accomplishment unlawful, there is no ground for the charge of conspiracy, and the fact of combination is wholly immaterial. *Commonwealth* v. *Hunt*, 4 Met. 111, 129 ; *Bowen* v. *Matheson*, 14 Allen, 499 ; *Wellington* v. *Small*, 3 Cush. 145, 150 ; *Carew* v. *Rutherford*, 106 Mass. 1, 14 ; *Paine* v. *Western & Atlantic R. R. Co.*, 81 Tenn. 507, 521 ; *Hunt* v. *Simonds*, 19 Mo. 583, 588 ; *Robertson* v. *Parks*, 76 Md. 118, 134, 135 ; *Mogul Steamship Co.* v. *McGregor*, L. R. 23 Q. B. 598 ; L. R. (1892) App. Cas. 25 ; *Bohm Mfg. Co.* v. *Hollis*, 54 Minn. 223, 234 ; *Delz* v. *Winfree*, 80 Tex. 400, 404.

We are of the opinion that the bill should be dismissed.

*Willard B. Tanner & Edward L. Gannon*, for complainants.

*James Tillinghast, William R. Tillinghast & Theodore F. Tillinghast*, for respondents.