**352 A.2d 625.**

WAYNE DISTRIBUTING CO. *vs.* SCHWEPPES U.S.A.

LIMITED *et al.*

MARCH 4, 1976.

PRESENT: Paolino, Acting C. J., Joslin and Kelleher, JJ.

JOSLIN, J. In this civil action Wayne Distributing Co. ("Wayne") seeks compensatory and punitive damages from Schweppes U.S.A. Limited ("Schweppes") for the alleged breach of a distribution contract and from Pepsi Cola Metropolitan Bottling Company, Inc. ("Pepsi") for

the alleged tortious interference with that contract. In addition Wayne asks that both defendants be enjoined from performing any act in derogation of its obtaining and distributing Schweppes products as provided for by the distribution contract. The case was tried to a Superior Court justice sitting without a jury and on October 26, 1973, a judgment was entered that in substance denied Wayne's claims for damages but enjoined Schweppes from terminating and Pepsi from interfering with the distributorship agreement prior to January 31, 1975. Both Wayne and Schweppes appealed, but the latter withdrew its appeal prior to the argument in this court.

## *Wayne* v. *Schweppes*

The parties are in basic agreement on the facts pertinent to the litigation between Wayne and Schweppes. Wayne, a Rhode Island corporation, was organized in 1970, and until mid-1971 engaged solely in the distribution of malt beverages and wine to authorized purveyors of alcoholic beverages. At that time Pepsi was the only distributor in this state of the carbonated beverages produced by Schweppes, and it appointed Wayne a subdistributor. This appointment continued until late 1972 when Wayne's relations with Pepsi came to an end and it began to acquire Schweppes products either directly or indirectly from Schweppes. Finally, at a meeting in early 1973, Wayne received Schweppes' assurances that it had become an authorized Schweppes distributor. Neither then, nor at any other time, was there any discussion of the duration of the distributorship or whether it could be terminated at will or only for cause. On August 17, 1973 Schweppes notified Wayne that their agreement would be terminated effective September 1 of that year and this litigation followed.

At issue are the duration of a distributorship-type agreement of indefinite term and lacking any express provision

regarding terminability, as well as the liability of a supplier for breach of contract in cancelling that kind of arrangement. These issues, although of first impression in this state, have been decided elsewhere with varying results. *See generally* 1 Corbin, *Contracts* §96 (1963); Annot., 19 A.L.R.3d 196 (1968).[1] Here the trial justice, as we comprehend his bench decision, concluded that in the circumstances of this case the distributorship arrangement was terminable without good cause but only after it had run for a reasonable time. Alternatively, his conclusion might have been that the arrangement was cancellable at the will of either party but only after reasonable prior notice to the other.

Which he selected is of no significance because Wayne does not challenge the rule of law applied by the trial justice and hence we accept whichever he adopted, not as the law of the state, but as that of this case. Wayne's argument, rather, is that the trial justice would have concluded differently had the arrangement of the parties been construed in accordance with their unexpressed intention. That intention, it argues, was that the agreement was not terminable except for cause, and in support it points (1)

---

[1] It has been suggested that distributorship contracts resemble aspects of both sales contracts and agency or employment contracts. *J. C. Millett Co. v. Park & Tilford Distillers Corp.,* 123 F. Supp. 484, 492 (N.D. Cal. 1954); Annot. 19 A.L.R.3d 196, 212 (1968). With respect to the latter type of contract we have said that "* * * a promise to render personal services to another for an indefinite term is terminable at any time at the will of either party * * *." *School Comm.* v. *Board of Regents,* 112 R. I. 288, 291, 308 A.2d 788, 790 (1973). But we went on to say in that case:

"The rule as stated, however, is not as rigid as at first it might seem, for the presumption that a hiring unaccompanied by an expression of time is at will can be rebutted by evidence that the parties intended that it would be a fixed period. Such an intention can be gleaned from the course of prior dealings between the parties or from any other surrounding facts or circumstances which might shed any light on the question." *Id.* at 292, 308 A.2d at 790.

to the testimony of one of its executives that it would not have accepted the distributorship had it realized that it could be terminated without just cause; and (2) to the following testimony of a Schweppes vice president:

"Q. When you do appoint a distributor, it is your intention he be a distributor for Schweppes for a period of time?

"A. Um hum.

"Q. And do you have any idea at all as to what that period of time would be?

"A. No idea, no.

"Q. Generally speaking, is it as long as he does a good job and gets the product out?

"A. Yeah."

Even if it were proper for us to consider this asserted undisclosed intention of the parties in construing their agreement,[2] we do not believe that the quoted testimony necessarily expresses the intention that Wayne imputes to it. Certainly it is equally reasonable to infer that it suggests no intention whatsoever with respect to termination, or indeed of any contemplation other than Schweppes' hope and expectation that its distributorships would be smooth, profitable and of indefinite duration. Indeed, this intention appears to be the more likely when the quoted testimony is read in conjunction with what immediately preceded: "* * * when one appoints distributors, one doesn't usually say in the same breath, we're going to fire you. One hopes they can stay with you for a while." Moreover, the general understanding of Schweppes executives

---

[2]In *Pawtucket Mach. & Supply Corp.* v. *Monroe,* 73 R. I. 162, 164-65, 54 A.2d 399, 400 (1947), we acknowledged that the language of a contract is to be construed with reference to the intent of the parties, but then went on to say that "[t]he intention sought is only that expressed in the instrument and *not some undisclosed intention that the parties may have had in mind."* (Emphasis added.) *See also Flanagan* v. *Kelly's System of New England, Inc.,* 109 R. I. 388, 392-93, 286 A.2d 249, 251 (1972).

that the company's relationships with distributors like Wayne were cancellable at will is illustrated by what a longtime Schweppes employee said in the testimony which is set out in the margin.[3]

In light of the foregoing, it does not seem to us that Wayne has sustained its burden of establishing that there was uncontradicted and unimpeached evidence requiring

---

[3]"285 Q. To get back for a moment to the question of termination, does Schweppes take the position—Strike that—Is it your testimony that from the day you first came into the New England area and began appointing distributors that you, as a representative of Schweppes, felt that you could terminate any of these distributors after appointment, at will?

"A. Yes, that is the feeling that I have always had.

\* \* \*

"288 Q. So that in 1960 when Mr. Thwaites took over the New England area, he was fully advised that it was Schweppes' intention that they could terminate any of these distributors at will?

"A. Yes.

\* \* \*

"298 Q. So that this issue of whether Schweppes has the right to terminate at will or not has never arisen in your experience in the New England market?

"A. Not in New England, no.

"299 Q. You've had experience with it in other places?

"A. Many. We appointed a bottler in the early part of April in Indianapolis, a Seven Up bottler whose territory for Seven Up covers about ninety percent of the State of Indiana. We terminated about twenty beer distributors.

\* \* \*

"302 Q. How about—Let's say ten years ago, did this ever happen in any part of the country that you're familiar with ten years ago, within that time frame?

"A. You mean terminate distributors?

"303 Q. Yes.

"A. It's been going on enough.

"304 Q. Without just cause?

"A. Without just cause, making changes, trying to improve sales, following up, trying to improve profits."

the trial justice to find as a fact[4] that the parties intended that their relationship was not cancellable except for cause. This conclusion is in no way altered by Wayne's further assertion that the uncontradicted evidence discloses a trade usage that distributorships are terminable only for cause. First, Wayne has not specified where in the record and the appendix evidence of the existence of that usage may be found, and we are under no obligation to consider evidence not so specified. Sup. Ct. R. 16(a). Moreover, the references to trade usage that we have found from our independent search of the record reveal Wayne's acquiescence in a ruling of the trial justice barring introduction of that kind of evidence as well as a substantial body of contradictory evidence produced by Schweppes denying the existence of such a usage.

Wayne's next assignment of error relates to the exclusion of Robert J. Burgess' testimony. He was an assistant director of marketing in the New England states for the Falstaff Brewing Company, a company engaged in the brewing and sale of malt products, and according to Wayne's offer of proof apparently would have testified concerning the cost to a distributor like Wayne of opening a Schweppes account. If that evidence had been admitted, Wayne asserts, it would have furnished the trial justice with a factual basis for determining what would constitute a reasonable time for the duration of its distributorship contract, that is, how long it would take to recoup its losses and earn a reasonable profit.

We consider Wayne's contention though we entertain

---

[4]*Beaupre* v. *Dynachem Corp.*, 113 R. I. 612, 615-16, 324 A.2d 621, 623 (1974); *Laganiere* v. *Bonte Spinning Co.*, 103 R. I. 191, 194, 236 A.2d 256, 257-58 (1967); *Gorman* v. *Hand Brewing Co.*, 28 R. I. 180, 183, 66 A. 209, 211 (1907).

doubts on the sufficiency of its offer of proof,[5] and our examination of the record indicates that the trial justice did not reject the evidence because of the insufficiency of the offer of proof or because he believed it irrelevant or at odds with the theory of law he had invoked. Instead, he apparently believed that Burgess' experience in marketing only malt products had not furnished him with the occupational or special experience required to permit an expression of opinion on the cost of persuading a malt products customer to add the Schweppes line to its stock in trade. That ruling went to the witness' experiential qualifications and a trial justice's ruling in that area will not be disturbed absent an abuse of discretion. *Redding* v. *Picard Motor Sales, Inc.*, 102 R. I. 239, 247, 229 A.2d 762, 767 (1967). No such abuse was shown here.[6]

In summary, Wayne's arguments have failed to convince us that we should interfere with the trial justice's disposition of its claim against Schweppes.

---

[5]In *Manning* v. *Redevelopment Agency,* 103 R. I. 371, 238 A.2d 378 (1968), we articulated the form which an offer of proof should take:

> "Normally, and certainly if the stated purpose of providing the reviewing court with a clear picture of what was intended to be proved is to be realized, the offer should be reasonably specific, rather than general (citation omitted); should include a statement of the facts to which the witness would testify (citation omitted); should indicate the purpose and object of the proof offered (citation omitted); and should establish that the evidence sought to be elicited is admissible." *Id.* at 379, 238 A.2d at 382-83.

[6]In *Redding* v. *Picard Motor Sales, Inc.,* 102 R. I. 239, 247, 229 A.2d 762, 767 (1967), we said that:

> "Neither do we think that a refusal to permit one to testify as an expert would be an abuse of discretion where, while it was shown that he had some general experience with regard to the subject matter of the testimony, he did not possess specific knowledge concerning a particular phase of the subject matter under consideration."

## *Wayne* v. *Pepsi*

To prevail in its claim that Pepsi tortiously interfered with its relationship with Schweppes, Wayne was required to show: (1) the existence of a contract; (2) Pepsi's knowledge of that contract; (3) its intentional interference therewith; and (4) the damages resulting therefrom. *Smith Dev. Corp.* v. *Bilow Enterprises, Inc.,* 112 R. I. 203, 211, 308 A.2d 477, 482 (1973).

The parties agree that there was a contract and that Pepsi was aware of its existence but disagree on whether Pepsi intentionally interfered with that contract. Wayne argues that the trial justice failed to consider the positive evidence that a Pepsi vice president had suggested to certain of Schweppes' executives that Wayne's contract be terminated and that Pepsi become Schweppes' exclusive distributor in the New England states. The trial justice's oversight of this evidence, Wayne contends, deprives his finding of noninterference of the great weight to which it would otherwise be entitled on review.

If that were the only pertinent evidence on the question of interference and if it were accurately related, Wayne would be on more solid ground. But its accuracy is disputed and in addition there is other evidence to the effect that Schweppes' decision to appoint Pepsi its exclusive distributor for the New England states was based upon its own business judgment that a single distributor would be more effective than several and would eliminate many of the marketing problems then being encountered. It was upon this evidence that the trial justice based his finding of noninterference, and by accepting it he impliedly rejected that referred to by Wayne and hence cannot be said to have overlooked it. *Gordon* v. *Campanella Corp.,* 112 R. I. 417, 425, 311 A.2d 844, 849 (1973); *Flynn* v. *Pearce,* 106 R. I. 323, 330, 259 A.2d 401, 404 (1969). Ac-

cordingly, Wayne has failed to sustain its burden of establishing at least one of the *Bilow* requirements.

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court for further proceedings.

Mr. Chief Justice Roberts was present at oral argument but retired prior to consideration or decision of this case. Mr. Justice Doris did not participate.

*Coffey, McGovern and Novogroski, John G. Coffey, Jr.,* for plaintiff.

*Hinckley, Allen, Salisbury & Parsons, Robert W. Lovegreen,* for Schweppes U.S.A. Limited and Jefferson Bottling Co.

*Edwards & Angell, Richard M. Borod,* for Pepsi Cola Metropolitan Bottling Company, Inc., for defendants.