MORTGAGE GUARANTEE &
TITLE COMPANY

v.

COMMONWEALTH MORTGAGE CO.,
INC. and John Sousa, Jr., President,
Individually and as President of Commonwealth Mortgage Company, Inc.

Civ. A. No. 89–0443 L.

United States District Court,
D. Rhode Island.

Feb. 13, 1990.

Joseph Kelly, Providence, R.I., for plaintiff.

Steven Snow, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on plaintiff's motion for injunctive relief by way of summary judgment and defendants' cross motion for summary judgment. Mortgage Guarantee & Title Company (Mortgage Guarantee) seeks to have defendants, Commonwealth Mortgage Company, Inc. (Commonwealth) and John J. Sousa, Jr., the President of Commonwealth, enjoined from continuing a business policy under which Commonwealth refuses to accept title insurance policies, issued by Mortgage Guarantee, in connection with Commonwealth's home mortgage loans. Plaintiff claims that, as a matter of law, defendants have tortiously interfered with Mortgage Guarantee's existing and prospective contractual relations.

### Background

The undisputed facts are as follows. Mortgage Guarantee and First American Title Insurance Company (First American) both operate title insurance companies which insure the titles to real estate located in the State of Rhode Island. First American also reinsures title insurance policies

issued by others. Commonwealth is the largest residential mortgage firm in Rhode Island, having a 6–8% share of the home mortgage market. Commonwealth has required and still requires its borrowers to purchase title insurance policies, on its behalf, to the extent of the mortgage. Prior to September, 1988, First American and Mortgage Guarantee often fulfilled this title insurance requirement and insured Commonwealth as the mortgagee of property.

Commonwealth, Mortgage Guarantee, and First American all follow a general, standard procedure during the course of a real estate transaction. Each company has authorized a set of Rhode Island attorneys to do business for them in this State. The companies often utilize the services of the same attorneys. A home purchaser, attempting to obtain a loan from Commonwealth, may choose from Commonwealth's list of approved closing attorneys or may retain his or her own counsel. The chosen attorney examines the title, or the historical ownership, of the property, to assure that no defects exist which could infringe on the buyer's or mortgagee's interest in the property. The attorney also issues insurance binders and policies to guarantee the title. Generally, Rhode Island attorneys are authorized by more than one title company to issue binders and policies. For example, although Mortgage Guarantee specifically requires its attorneys to sign a contract with the company before it will allow a particular attorney to issue binders or policies, nothing in the agreement requires the attorneys or agents to sell Mortgage Guarantee policies at the exclusion of other title insurance policies. The attorneys, in effect, become independent general insurance agents for title policies.

In 1986, while First American and Commonwealth worked together, assisting a mortgage company to liquidate, their relationship became strained. The companies disagreed over the prices which should be offered to repurchase the mortgages owned by the outgoing business. As a result, on April 27, 1988, John J. Sousa, in his capacity as President of Commonwealth, mailed a letter to all Commonwealth closing attorneys which specified that after September 1, 1988, Commonwealth would no longer accept title insurance policies written by First American.

Following the April 27th letter, Commonwealth continued to accept title policies from Mortgage Guarantee. On December 2, 1988, First American purchased a majority interest in Mortgage Guarantee such that Mortgage Guarantee became an independently owned and operated subsidiary of First American. Since December 2, 1988, First American has reinsured all of Mortgage Guarantee's title policies. No problems have arisen from any of the policies issued by Mortgage Guarantee to Commonwealth after December 2, 1988. On July 5, 1989, Sousa distributed a second letter to all Commonwealth closing attorneys indicating that as of August 1, 1989, Commonwealth would no longer accept title policies from Mortgage Guarantee.

Plaintiff has some seven hundred attorneys and approximately fifteen insurance agents approved to issue insurance binders and title policies in Rhode Island. Since August 1, 1989, Mortgage Guarantee has received several letters and telephone calls from attorneys regarding defendants' refusal to do business with Mortgage Guarantee. The attorneys have indicated that the rift between the two companies has created problems for them and they have requested that Mortgage Guarantee act promptly to correct the situation.

Mortgage Guarantee, a Rhode Island corporation, initiated this suit in the Rhode Island Superior Court for Providence County, against Commonwealth and against John J. Sousa, Jr., individually and in his capacity as President of Commonwealth. Commonwealth is incorporated and maintains its principal place of business in Massachusetts. John J. Sousa is domiciled in Massachusetts. Pursuant to 28 U.S.C. § 1441, defendants removed this case to the United States District Court for the District of Rhode Island on the basis of diversity.

Plaintiff claims that because of defendants' refusal to accept Mortgage Guaran-

tee policies, Mortgage Guarantee has lost business and good will. Mortgage Guarantee argues that defendants' decision has unjustifiably interfered with plaintiff's business relationships. It argues, in the alternative, that even if defendants' interference was justifiable, the means utilized to accomplish the justifiable end violated Rhode Island law and, thus, constituted tortious conduct. Mortgage Guarantee seeks an injunction mandating Commonwealth to rescind the July 5, 1989 letter and to resume its business association with Mortgage Guarantee. Plaintiff also seeks damages for defendants' tortious interference with plaintiff's contractual relations with the attorneys that issue its title policies, but that is not involved in this phase of the case.

Defendants postulate that as a matter of law they justifiably sought to protect their own financial interests when they decided to discontinue their business association with Mortgage Guarantee. Defendants contend that they distrusted First American's integrity and that such distrust transferred to Mortgage Guarantee when First American purchased Mortgage Guarantee. Defendants argue that the law protects their unilateral decision to refuse to deal with Mortgage Guarantee provided that their decision does not violate anti-trust laws.

After having heard oral arguments on these motions the Court took the matter under advisement. It is now in order for decision.

## Discussion

Both parties have moved for summary judgment. There are no disputed issues of material fact in this case. Therefore, under Federal Rules of Civil Procedure 56(c), the question becomes who, if anyone, is entitled to judgment as a matter of law.

Plaintiff claims that it is entitled to injunctive relief because the undisputed facts establish that the tortious conduct of Commonwealth has interfered with its right to do business. Whether or not this Court should grant plaintiff's request for injunctive relief will depend on whether plaintiff's claim for tortious interference with

contractual relations should prevail as a matter of law. If this Court ultimately decides the merits of this case by concluding that, as a matter of law, defendants acted properly and within their discretion by refusing to deal with Mortgage Guarantee, this Court must deny plaintiff's request for an injunction. *See American Medi–Lab, Inc. v. Kennedy*, 492 A.2d 1234, 1235 (R.I.1985); *Brown v. Amaral*, 460 A.2d 7, 10 (R.I.1983) (must establish interference with legal right before injunctive relief granted), and order summary judgment for the defendants. *See SEC v. Koracorp Indus.*, 575 F.2d 692, 695 (9th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978). Even if the plaintiff's claim should prevail, the Court may utilize its sound discretion to determine whether the circumstances warrant equitable relief. *See Suro v. Llenza*, 531 F.Supp. 1094, 1102 (D.P.R.1982).

To maintain a cause of action in Rhode Island for tortious interference with contractual relations, whether existing or prospective, requires that plaintiff shows "(1) the existence of a business relationship or expectancy, (2) knowledge by the interferor (sic) of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff." *Mesolella v. City of Providence*, 508 A.2d 661, 669 (R.I.1986). When asserting interference with an existing contractual relationship, the plaintiff must prove the above as well as that an actual contract exists with a third party. *Id.* at 670. An intent to do harm without justification is also required, but the defendant has the burden of showing justification. *Id.* at 669–70: *Smith Dev. Corp. v. Bilow Enter., Inc.*, 112 R.I. 203, 208–09, 211, 308 A.2d 477, 480, 482 (1973). The *Mesolella* decision refers to the Restatement (Second) of Torts which provides:

> One who intentionally and *improperly* interferes with another's prospective contractual relation ... is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference con-

sists of (a) inducing or otherwise causing a third party not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

*Mesolella, supra,* 508 A.2d at 669; *see also* Restatement (Second) of Torts § 766B (1979) (emphasis added).

■ Defendants here do not dispute that their conduct has harmed plaintiff's business. Rather, they argue that because their decision to terminate their association with Mortgage Guarantee fell within the traditional common law precept that businesses may unilaterally refuse to deal with other businesses, their conduct was proper.

Within the constructs of laissez-faire and free enterprise, the common law legitimizes the use of independent discretion by businesses to decide with whom they will and will not do business. *See United States v. Colgate & Co.,* 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919); *Macauley Bros. v. Tierney,* 19 R.I. 255, 258–59, 261, 264, 33 A. 1 (1895). Anti-trust laws and notions of fair play provide the only limitations to that right. *United States v. Colgate,* 250 U.S. at 307, 39 S.Ct. at 468. Absent some restraint of trade or some attempt to monopolize the market, courts should allow businesses to utilize their independent judgment and to protect their interests without judicial intervention. *Consolidated Farmers Mut. Ins. Co. v. Anchor Sav. Assn.,* 480 F.Supp. 640, 654–55 (D.Kan.1979); *Wayne Distrib. Co. v. Schweppes U.S.A. Ltd.,* 116 R.I. 108, 115, 352 A.2d 625, 629 (1976).

Defendants have no duty to accept Mortgage Guarantee's title policies. They have every right to refuse Mortgage Guarantee business especially since they legitimately seek to protect their own financial interests. *See Winter Hill Frozen Foods and Serv., Inc. v. Haagen–Dazs Co.,* 691 F.Supp. 539, 548–49 (D.Mass.1988); *Federal Auto Body v. Aetna Casualty & Sur. Co.,* 447 A.2d 377, 380 (R.I.1982); *Wayne Distrib., supra,* 116 R.I. at 115, 352 A.2d at 629; *Macauley, supra,* 19 R.I. at 259–61, 33 A. 1. Commonwealth has a financial interest in the title policies relating to prop-

erty financed by Commonwealth. Title insurance protects Commonwealth's investment from losing value due to unforeseen liens, etc., only to the extent that the title company itself is financially and professionally sound. Commonwealth's President, Sousa, stated in his deposition that after Commonwealth and First American worked together in 1986, he questioned First American's professional integrity. He stated that after the incident with First American, he would not want Commonwealth's loans insured by First American. As the reinsurer for all of Mortgage Guarantee's policies after December 2, 1988, First American would eventually have reinsured all title policies involving Commonwealth had Commonwealth not instituted its practice of refusing Mortgage Guarantee policies. Defendants acted reasonably and justifiably in protecting their business interests by refusing to deal with plaintiff.

In any event, defendants have not interfered with plaintiff's past or prospective contracts with attorneys. In actuality, the existing contracts between Mortgage Guarantee and its attorney-agents remain intact. The attorneys do not breach their contracts with Mortgage Guarantee by issuing other title policies because of defendants' refusal to deal with Mortgage Guarantee. Mortgage Guarantee's prospective contracts with attorney-agents to issue title policies in the future are not affected, because Mortgage Guarantee remains free to contract with any attorney it wishes and vice versa. Clearly then, plaintiff has failed to show how Commonwealth's refusal to accept plaintiff's title policies presents a case of tortious interference with contractual relationships under Rhode Island law.

■ Plaintiff claims, however, that defendants used improper means to protect their financial interests. Mortgage Guarantee contends that Commonwealth's business policy violates R.I.Gen.Laws §§ 19–10–9, 27–29–4(10). Plaintiff argues that defendants' common law right of discretion must yield to the Rhode Island General Assembly's proscriptions. *See Traugott v. Petit,* 122 R.I. 60, 63, 404 A.2d 77, 79 (1979). Rhode Island General Law

§ 27–29–4(10) provides that there shall be "no interference either directly or indirectly with the borrower's, debtor's, or purchaser's free choice of an agent and of an insurer." The section, however, refers to *property* insurance. *Id.* Property insurance insures tangible personal and real property, as opposed to title insurance which insures the intangible title. Further, Title 27 of the Rhode Island General Laws does not govern title insurance companies. The Title specifically regulates fire, casualty and life insurance, for example, *see* R.I. Gen.Laws §§ 27–5–1 *et seq.*, 27–3.1–1 *et seq.*, but makes no mention of title insurance or title insurance companies. Since Mortgage Guarantee is a title insurer rather than a property insurer, the statute cited is inapplicable.

■ Plaintiff's argument that defendants' policy interferes with the borrower's right to choose a title attorney as provided in Rhode Island General Laws § 19–10–9 likewise is flawed. Section 19–10–9 requires that lending institutions allow prospective mortgagors to choose their own title attorney. The statute further provides, however, that "the prospective mortgagor [may] ... permit ... the lending institution to select its own attorney." By allowing its borrowers to choose their own title attorney or by providing its own authorized closing attorneys, Commonwealth falls within the permissible provision quoted above. Commonwealth's nonacceptance of Mortgage Guarantee's title insurance policies affects who the title attorney chosen by the borrower may deal with. It does not affect who the borrower chooses as a title attorney. Because defendants' conduct falls outside of the cited statutes, defendants' common law right remains intact. *See Yang v. Sturner*, 728 F.Supp. 845, 851–52 (D.R.I.1990).

## Conclusion

For the reasons stated above, plaintiff's motion for summary judgment hereby is denied and defendants' cross motion for summary judgment hereby is granted.

The Clerk will enter judgment for the defendants.

*It is so Ordered.*