**N.E. ALPINE SKI SHOPS, INC., d/b/a Divers World, Plaintiff, Appellant,**

v.

**U.S. DIVERS CO., INC., Defendant, Appellee.**

No. 89–2017.

United States Court of Appeals, First Circuit.

Heard Feb. 7, 1990.

Decided March 21, 1990.

David A. Schechter with whom Law Offices of David A. Schechter, Providence, R.I., was on brief, for plaintiff, appellant.

Kevin M. Brill with whom Corrente & Brill, Providence, R.I., was on brief, for defendant, appellee.

Before BREYER, ALDRICH and CYR, Circuit Judges.

CYR, Circuit Judge.

In this action for breach of contract, Alpine, a sports equipment retailer, claimed that Divers, a manufacturer of scuba gear, "wrongfully terminated" the parties' "distributorship agreement" in January 1988. Divers responded that there was no distributorship agreement in existence between the parties on that date. The district court granted summary judgment for Divers, and Alpine appeals. We agree that Divers had no distributorship agreement with Alpine in January 1988, and we affirm.

I

*Background*

These are the facts viewed in the light most favorable to Alpine. *See Rossy v. Roche Products, Inc.*, 880 F.2d 621, 624 (1st Cir.1989); *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir. 1988). For approximately twenty years Alpine sold products manufactured by Divers. Their relationship during most of that time was governed by a series of "Dealer Sales Agreement[s]," in which Divers recited its intention:

(1) "to establish a valuable reputation and goodwill for" Divers' products;

(2) "to spend substantial sums of money in the promotion and advertising of" Divers' products; and

(3) "to work closely with and actively assist selected dealers who are willing to abide by the requirements of this Dealer Sales Agreement to promote the sale of" Divers' products.

In exchange, Alpine promised, among other things:

(1) "to promote conscientiously and diligently the sale of [Divers'] products on a full-time year round basis;"

(2) to include in its stores "an air station, proper demonstration capability, and a full and proper display of products and point-of-sale advertising materials;" and

(3) to maintain "trained technical personnel" familiar with Divers' products, along with sufficient inventory to meet local demand.

Alpine fully complied with these contractual obligations. The contracts also contained a "forum selection clause" in which "the parties mutually consent to the jurisdiction of the courts of the State of California" in the event of any dispute or controversy arising under the agreement.

In December 1986, the "Dealer Sales Agreement" then in effect between the parties expired, and Alpine decided not to sign a new one. (According to deposition testimony of Alpine's vice-president, Alpine had become "gun shy of signing anything" after a former Alpine employee sued Alpine for breach of contract.) Nonetheless, Alpine continued to order products from Divers. In March 1987, Divers sent Alpine the following form letter over the signature of a Divers vice-president:

Dear Pro Line Dealer:

We have recently completed an evaluation of your account and it is with great pleasure that we today notify you that you have been renewed as both a Pro Line and U.S. Divers Dealer for 1987. Your continued support of our company and the Pro Line Agreement has been noted and appreciated. In return, we will continue to support and maintain a

strong dealer network with products, programs, and service. This partnership will ensure a profitable future for us all.

Once again, thank you for your support.

During 1987, Alpine placed purchase orders with Divers, and Divers filled some of them. Then, in January 1988, Divers wrote a letter to Alpine terminating Alpine's "status as a dealer of U.S. Divers ... effective immediately."

The district court granted Divers' motion for summary judgment, delivering its opinion in open court. We repeat the relevant portion of the opinion.

The fact of the matter is, there was no contractual relationship between the parties for the whole year 1987 and into 1988, and therefore, the defendant's announcement that it would not sell any more diving gear to the plaintiff for resale was simply an announcement and did not constitute a breach of contract. This case is predicated on a breach of contract by the defendant. It is clear on these undisputed facts that the plaintiff cannot recover on a breach of contract theory against this defendant, and this defendant had a right not to continue to do business with this plaintiff.

## II

### Discussion

Unlike the district court, we do not consider whether the parties had a contractual relationship during 1987, because Alpine did not allege a violation of a 1987 contract in its complaint. Rather, Alpine alleged that, "on January 19, 1988, defendant wrongfully and without justification terminated plaintiff's distributorship agreement;" and it sought damages equal to "the actual damage to plaintiff's business and property resulting from the wrongful termination of plaintiff's distributorship." Nowhere in the complaint did Alpine allege a breach of any contract prior to 1988, nor did it seek damages for anything other than the "wrongful[ ] ... terminat[ion]" of its "distributorship agreement." Therefore, the sole legal question before us is whether the parties were legally bound by

a distributorship agreement on January 19, 1988. We hold that they were not.

When we asked Alpine at oral argument to identify the evidence that, in its view, proved that a "distributorship agreement" existed between the parties on January 1988, it pointed to a signed "Dealer Sales Agreement" between the parties, Divers' letter of March 1987 renewing Alpine as a "U.S. Divers dealer," an affidavit by Alpine employee, Gary Anderson, and the parties' extended course of dealing. As we demonstrate below, none of these items, considered separately or together, evidence a distributorship agreement between the parties in January 1988.

■ *a. The Dealer Sales Agreement.* The "Dealer Sales Agreement" to which Alpine points expired in December 1986, well before the alleged "wrongful termination" in January 1988. Indeed, when Divers asked the district court to transfer this case to the Southern District of California pursuant to the Dealer Sales Agreement's "forum selection clause," Alpine objected successfully on the ground that the latest Agreement signed by the parties "was terminated prior to plaintiff's cause of action accruing and, therefore, has no force and effect on this lawsuit." (As we explained earlier, Divers sent Alpine a new Agreement when the old one expired, but Alpine refused to sign it.) Obviously, Alpine cannot base its right to recover in this action on an Agreement that Alpine itself believes "has no force and effect on this lawsuit."

■ *b. The March 1987 letter.* Even if Divers' March 1987 letter, notifying Alpine that it had "been renewed as both a Pro Line and U.S. Divers Dealer for 1987," created a contract between the parties, it was, by its own unambiguous terms, a contract for the year 1987. Thus, even if it is true, as Alpine stated in opposition to Divers' summary judgment motion, that this letter obligated Divers to fill Alpine's orders during 1987, we can find no support for Alpine's next statement, that "[i]f Alpine's orders [during 1987 had been] honored by U.S. Divers, Alpine would have met the necessary performance standard and

would have been appointed a Dealer for 1988." The letter, which we have reproduced in full above, *supra* p. 288, simply renews Alpine as a dealer "for 1987." It says nothing about appointing Alpine a dealer in 1988, and it makes no reference to a "performance standard." It might well be, of course, that if Alpine *had* met some "performance standard" in 1987, Divers *would* have reappointed Alpine a dealer in 1988; but, as we have said, the March 1987 letter does not constitute a legally enforceable *promise* to make Alpine a dealer in 1988 for *any* reason. Thus, Divers' decision to terminate Alpine as a dealer in January 1988 did not violate any contract that might have been formed by the March 1987 letter, even if that decision was, as Alpine believes, terribly unfair.

■ *c. Gary Anderson's affidavit.* Nothing in the affidavit of Gary Anderson, Alpine's Buyer of Hardgoods, helps turn the March 1987 letter (or the expired Dealer Sales Agreement, or anything else before the court) into a distributorship agreement extant in January 1988. Anderson begins his affidavit by reviewing Alpine's twenty-year long effort to promote and sell Divers' products. He then states that Alpine was forced to buy $12,000 worth of Divers merchandise from another dealer, because Divers, despite its March 1987 letter renewing Alpine's dealership, filled only $847 worth of Alpine's orders. Finally, he says that Divers' stated reason for terminating Alpine as a dealer in January 1988 was that Alpine had not purchased enough equipment from Divers in 1987, and that this reason was "not true," because Divers had simply refused to fill Alpine's "numerous" equipment orders. Even assuming, however, as we must, that Alpine is correct, *see, e.g., Rossy v. Roche Products, Inc.,* 880 F.2d at 624, that Divers terminated Alpine because of its failure to buy enough equipment, and that this failure was really Divers' fault, we still see no legal relevance to these facts. As we have said, unless Divers had a legal obligation to continue Alpine as a dealer in 1988, it was free to terminate Alpine for any reason at all, or for no reason.

In its brief, Alpine argues that the Anderson affidavit is evidence that Alpine "perform[ed] ... traditional dealership functions," that Alpine therefore "should be treated as a buyer-distributor," and that Rhode Island law prohibits manufacturers from terminating dealers without either "good cause" or "reasonable prior notice." *See, e.g., Wayne Distributing Co. v. Schweppes,* 116 R.I. 108, 352 A.2d 625 (1976); *California Wine Ass'n. v. Wisconsin Liquor Co.,* 20 Wis.2d 110, 121 N.W.2d 308 (1963); *San Francisco Brewing Corp. v. Bowman,* 52 Cal.2d 607, 343 P.2d 1 (1959). But, as Alpine itself acknowledges, the cases to which it cites deal only with distributorship agreements of *indefinite* duration. The only agreements in the record, however, are the "Dealer Sales Agreement," which expires by its own terms no later than 1986, and the March 1987 letter, which, we have said, created a contract, if at all, only for the year 1987; nor do we see how the Anderson affidavit, standing alone, can be evidence of an indefinite contract between the parties.

*d. Course of Dealing*

■ Alpine urges us to consider the parties' course of dealing, *see* R.I. Gen. Laws § 6A–1–205(1), (3), (4), consisting of an unbroken succession of written contracts that spanned approximately twenty years before Alpine (having learned from a lawsuit by a former employee that signed contracts create legal obligations) refused to sign a Dealer Sales Agreement for 1987. Since Divers rightfully repugns reinstatement of the Alpine dealership in any form, we cannot envision that Alpine's unilateral termination of their extended course of dealing advances in any way its argument that the March 1987 letter from Divers somehow resurrected the dead letter *1986* Dealer Sales Agreement and reincarnated its dealership not only through 1987, but beyond.

### III

*Conclusion*

Undisputed evidence establishes that over the course of twenty years Alpine periodically renewed its status as a Divers

dealer by executing a new "Dealer Sales Agreement" each time the previous one expired. By refusing to sign a new dealership agreement in 1986, Alpine terminated *itself* as a dealership. If the March 1987 letter renewed the dealership agreement, it did so only for 1987. Nothing in the record evidences a dealership agreement between the parties in January 1988. *A fortiori,* Alpine was not "wrongfully terminated" on that date.

*Affirmed,* with attorney fees and double costs to appellee.[1]

---

1. Divers requests an award of attorney fees and double costs. *See* Fed.R.App.P. 38 & 39; 1st Cir.R. 39. "An appeal is frivolous when the result is obvious, or the arguments are 'wholly without merit.'" *Natasha, Inc. v. Evita Marine Charters, Inc.,* 763 F.2d 468, 472 (1st Cir.1985) (quoting *NLRB v. Catalina Yachts,* 679 F.2d 180, 182 (9th Cir.1982)); *Applewood Landscape & Nursery Co., Inc. v. Hollingsworth,* 884 F.2d 1502, 1507 (1st Cir.1989). From aught that our analysis has revealed to us, Alpine compelled Divers to attend our venue, hoping for nothing less than a miracle. We appreciate only too well how bereft of promise Alpine's hopes were for obtaining the requested relief at this level. Accordingly, "as a matter of justice to the appellee," Fed.R.App.P. 38 advisory committee's note, for its costs in attending this nonevent, and "as a penalty against the appellant," *id.,* for insisting upon it, we grant the motion for an award of attorney fees, with double costs. *Cf. Cruz v. Savage,* 896 F.2d 626, 634 (1st Cir.1990) (quoting *Cruz v. Savage,* 691 F.Supp. 549, 556 (D.P.R. 1988) ("[T]here is a point beyond which zeal becomes vexation ... and steadfast adherence to a position transforms to obdurateness." (rule 11 sanctions imposed in district court).