STURBRIDGE HOME BUILDERS,
INC., as nominee of Seaport
Home Builders, Inc.

v.

DOWNING SEAPORT, INC., et al.

No. 2004–351–APPEAL.

Supreme Court of Rhode Island.

Dec. 29, 2005.

Lauren E. Jones, Providence, for Plaintiff.

George E. Lieberman, Providence, for Defendant.

Before WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

**Justice Goldberg, for the Court.**

The plaintiff, Sturbridge Home Builders, Inc., as nominee of Seaport Home Builders, Inc. (plaintiff), is before the Supreme Court on appeal from partial summary judgment entered in the Superior Court in favor of the defendants, Downing Seaport, Inc., and Richard Baccari and Charles White, as successors in interest to Downing Seaport, Inc., and Downing/Salt Pond Partners (defendants). The plaintiff requests that this Court vacate the judgment and remand this case to the Superior Court for trial. We are not persuaded by the plaintiff's arguments, and we affirm the partial summary judgment entered by the Superior Court.

## Facts and Travel

It is undisputed that plaintiff and defendants entered into a purchase and sales agreement (agreement) on June 7, 1993, in which plaintiff contracted to acquire real estate in Narragansett that defendants were developing as house lots. The plaintiff planned to build houses on the lots and then sell them as single-family dwellings. The terms of the agreement provided that defendants were responsible for the infrastructure on the property and that "a public sewerage system will be available to the property and in operating condition no later than October 31, 1993." The agreement, drafted by plaintiff, also contained an option for plaintiff to purchase adjacent parcels in two separate phases. One option to purchase was to be exercised by December 31, 1993, and a second option was to be exercised by April 30, 1994.

The parties entered into the agreement despite the fact that an archeological site assessment suggested that a Native American burial site might be located on the property. The purchase and sales agreement contained a separate clause providing for the possibility that a stop-work order or cease-and-desist order might be issued because of the continuing archeological studies:

"In the event that as a result of an archeological study performed on the * * * property:

(a) A stop work order or a cease and desist order is issued, Seller shall immediately take whatever steps are necessary at Seller's expense to remove said stop work order and cease and desist order.

(b) * * *

(c) All performance dates set forth in this Agreement and due dates on any Promissory Notes executed by Buyer shall be extended by one day for each day that a stop order or cease and desist order remains in effect."

After the closing, as plaintiff began building houses in Phase I of the project, human remains and Native American artifacts were found on the site. The executive director of the state Historical Preservation Commission (HPC), by letter dated October 20, 1993, informed the executive director of the state Coastal Resources Management Council (CRMC) of the discovery of human skeletal remains and notified CRMC that the HPC had requested defendants and plaintiff "to stop all construction in the project area that may threaten to disturb burials, and thus far they have complied with this request." According to the HPC letter, G.L.1956 chapter 18 of title 23 [1] "requires that when human burials are discovered all construction stop while the boundaries of the cemetery are determined." The plaintiff contended that the HPC's request to cease work indefinitely extended the date for it to exercise its option to purchase the remaining lots under the terms of the agreement. The defendants argued that a stop-work order was not issued before the deadline for plaintiff to exercise its option to purchase the remaining lots in the development. The defendants contended that plaintiff failed to exercise its option

1. General Laws 1956 § 23–18–11(c) provides: "Whenever an unmarked cemetery or human skeletal material is inadvertently located during any construction, excavation, or other ground disturbing activity, including archeological excavation, the building official of the city or town where the unmarked cemetery or human skeletal material is located shall be immediately notified. * * * Prior to the continuation of any further construction, excavation, or other ground disturbing activity * * * the property owner shall undertake an archaeological investigation to determine the boundaries of the unmarked cemetery * * *."

rights under the terms of the purchase and sales agreement and therefore, they were free to sell the lots to another buyer. The record discloses that ten years after the agreement, plaintiff has not exercised the options in accordance with its terms.

On November 24, 2003, plaintiff filed suit in Superior Court seeking specific performance and/or damages. After the parties engaged in pretrial discovery, defendants moved for partial summary judgment arguing that the agreement was unambiguous, that plaintiff had failed to exercise its option in accordance with the contract and that defendants therefore were entitled to judgment as a matter of law. The motion justice granted partial summary judgment on the ground that the contract terms were clear and unambiguous and that the stop-work order was not issued until August 18, 1994, after the date for plaintiff to exercise its option. The motion justice held that the letter on October 23, 1993, from the HPC did not constitute a stop-work order and only warned of the possibility that a stop-work order could be issued. This appeal ensued.

### Ambiguity

We note at the outset that this agreement was entered into in 1993, and the complaint seeking specific performance was not filed until 2003, a decade later. We are also mindful that plaintiff has never exercised its option in accordance with the terms of the agreement: a written notice of intent accompanied by a deposit of $25,000 for Phase III (by December 31, 1993) and a second written notice and deposit of $25,000 for Phase IV (on or before April 30, 1994). In addition, we cannot overlook the significance of the fact that plaintiff has taken contrary positions before the Superior Court and this Court.

The record discloses that both parties argued on summary judgment that the terms of the agreement were clear and unambiguous. Moreover, both sides agreed that this contract was entered into by experienced real estate developers with equal bargaining power who were fully aware of potential archeological problems at the site. However, plaintiff now argues to this Court that the agreement is ambiguous and that the trial justice erred in failing to find ambiguity. We reject this contention, since plaintiff is now asking this Court to read into the agreement new and different terms that are inconsistent with those that its counsel drafted.

 This Court reviews an order granting summary judgment *de novo*. *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I.2003). When performing this review we determine whether the admissible evidence viewed in a light most favorable to the nonmoving party reveals a genuine issue of material fact. *Carlson v. Town of Smithfield*, 723 A.2d 1129, 1131 (R.I.1999). Once the party moving for summary judgment has alleged the absence of a disputed material fact, the nonmoving party seeking to avoid summary judgment has the burden to establish the existence of specific facts showing that there is an issue of material fact. *Providence Journal Co. v. Convention Center Authority*, 774 A.2d 40, 46 (R.I. 2001) (citing *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I.1998)).

 Whether the terms of a contract are ambiguous is a question of law. *Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc.*, 852 A.2d 535, 541 (R.I.2004) (citing *Dubis v. East Greenwich Fire District*, 754 A.2d 98, 100 (R.I. 2000)). When determining whether a contract is ambiguous, the agreement is viewed in its entirety and the words used in the contract are given their ordinary

meaning. *Samos v. 43 East Realty Corp.,* 811 A.2d 642, 643 (R.I.2002). " '[T]he question is * * * whether the language has only one reasonable meaning when construed * * * *in an ordinary common sense manner.'* " *Textron, Inc. v. Aetna Casualty and Surety Co.,* 638 A.2d 537, 541 (R.I.1994).

The purchase and sales agreement provided "[a]ll performance dates set forth in this [a]greement * * * shall be extended by one day for each day that a stop order or cease and desist order remains in effect." The hearing justice held that the HPC letter of October 20, 1993, warned that a stop-work order could be issued but that it was not a stop-work order. He noted that a cease-and-desist order was "a directive from a regulatory agency [to] cease and desist or stop all construction or words to that effect." The hearing justice also noted that plaintiff "was thorough in requesting specific language in the purchase and sales agreement providing for a delay of performance in the event of a stop work order" but failed to produce any evidence that "the option performance dates were postponed." Further, the hearing justice noted that the stop-work order that ultimately was issued in August 1994 by the Town of Narragansett was issued well past the deadlines for exercising the options, and "[n]ow ten more years have passed." [2]

■■■ We reject plaintiff's argument that the agreement is ambiguous. Before the hearing justice, both parties contended that the contract was unambiguous, and our examination of the agreement in its totality discloses no ambiguity in its terms. The parties in this case are sophisticated real estate developers who knew full well that a stop-work order could be issued upon the discovery of Native American artifacts or remains. They specifically provided for that contingency in the agreement that plaintiff drafted. It is undisputed that a stop-work order was not issued before the expiration of the deadlines set forth in the agreement, nor does the HPC have the authority to issue a stop-work order. The fact that work stopped on a portion of the site, without a stop-work order, is of no assistance to plaintiff. We shall not stretch our imagination to read ambiguity into a contract where none exists. *Textron, Inc.,* 638 A.2d at 539. Our task is to look to the totality of the circumstances surrounding the agreement and accord the plain and ordinary meaning to its express language. *Lajayi v. Fafiyebi,* 860 A.2d 680, 686 (R.I.2004) (citing *A.F. Lusi Construction, Inc. v. Peerless Insurance Co.,* 847 A.2d 254, 258 (R.I.2004)). Here, the totality of the circumstances disclose that the possibility of the discovery of human remains and Native American artifacts was anticipated, as well as the possibility that a cease-and-desist order could be issued to stop some or all of the work. This did not happen until after plaintiff's option rights expired. Furthermore, ten years later, plaintiff has never exercised its option rights. Rather, plaintiff filed suit seeking specific performance of option rights that it did not exercise.

■■■ The plaintiff also argued to the hearing justice that it did not exercise its option to purchase because the work was stopped and "we don't know what we're buying." The plaintiff contended that "the situation with the artifacts and Indian bur-

---

2. The cease-and-desist order, dated August 18, 1994, notified the developers that the installation of sewer lines "has disrupted a historic gravesite" and was "outside of the area for excavation agreed to by representatives of the Narragansett Indian Tribe, the State of Rhode Island Historic Preservation Commission and the owners and developers of the property."

ials needed to be resolved first before any intelligent business decision could be made." The plaintiff contended that it was "waiting for Mr. Baccari to resolve the issue with the Narragansett Indians;" it further contended that it still did not know "the extent it ha[d] been resolved." However, plaintiff filed suit seeking specific performance of the agreement. We are not confronted with a case in which plaintiff timely exercised its option, was ready, willing and able to perform for ten years and is simply waiting for the official approval to proceed. Rather, plaintiff contends it can wait for an indefinite period before it *decides* to exercise its option and buy the lots. The plaintiff is not entitled to specific performance under these circumstances.

 Specific performance of a real estate contract is not a matter of right, but is discretionary with the trial justice. *Fracassa v. Doris*, 814 A.2d 357, 362 (R.I. 2003) (*Fracassa I* ). To qualify for specific performance concerning real estate under a written contract, a party must establish that "he or she was at all times ready and willing to perform the contract[.]" *Id.* The plaintiff has failed to make this showing, and indeed, cannot meet its burden.[3] Although plaintiff "was anticipating that the issue would be resolved[,]" plaintiff failed to timely exercise the option. Viewing the evidence in a light most favorable to plaintiff, it is apparent that rather than exercising its option rights, plaintiff elected to sit back and wait and see what unfolded. Thus, we reject plaintiff's argument.

### Waiver and Estoppel

 The plaintiff, although contending that the contract was unambiguous, presented an alternate argument that the defendants had waived the requirement of a stop-work order and, therefore, had also waived the clear contractual requirement that all modifications be in writing. According to plaintiff, the "mandate" from the HPC constituted a stop-work order, and accordingly the parties "treated this as a work stoppage." The plaintiff argued that it did not exercise its option for the following reason: "[W]e did not know whether to exercise that option until the issue was resolved. We did not know if we would ever be able to build on that property."

Additionally, plaintiff points to a letter on October 31, 1994, to defendants from Michael D'Ambra,[4] noting that plaintiff had agreed to finance the sewer project for Phase I in exchange for a price reduction on lots in Phase II. However, this letter was written after the options at issue had expired, and it does not constitute a waiver, express or implied, of the terms of the contract. It is, at best, evidence of a new proposal or offer that is not before us. In its papers filed with this Court, plaintiff contends that defendants waived the manner in which contract terms may be modified and waived the requirement of a stop-work order. However, plaintiff fails to point to any evidence establishing the new contract terms, especially the term concerning the time within which plaintiff must exercise its option. The defendants contend that were we to accept this argu-

---

**3.** We do not mean to imply that even if plaintiff had made that showing he would have been entitled to specific performance of the agreement.

**4.** Michael D'Ambra is involved in this case through two businesses. One is his company,

D'Ambra Construction Company, which did some work at the site. The second entity is defendant, Downing Seaport, Inc., the development company. Michael D'Ambra is one of three shareholders of Downing Seaport, Inc.

ment, plaintiff would be afforded an unlimited time to exercise its option, thereby restricting the alienability of the property. We agree, and we decline to infer a waiver of contract provisions that would result in indefinitely postponing the time for plaintiff to exercise its option rights.

"[W]aiver is the voluntary, intentional relinquishment of a known right. It results from action or nonaction * * *." *Lajayi*, 860 A.2d at 687 (quoting *Haxton's of Riverside v. Windmill Realty, Inc.*, 488 A.2d 723, 725 (R.I.1985)). "The party claiming that there has been a waiver of a contractual provision has the burden of proof on that issue." *1800 Smith Street Associates, LP v. Gencarelli*, 888 A.2d 46, 55 n. 4 (2005); *see* 28 Am.Jur.2d *Estoppel and Waiver* § 225 (2000) ("The party claiming a waiver has the burden of proof of the facts on which the party relies to establish such a waiver, and unless such proof is forthcoming the party cannot sustain the claim."). "A waiver may be proved indirectly by facts and circumstances from which intention to waive may be *clearly inferred* [.]" 28 Am.Jur.2d at § 225. (Emphasis added). On summary judgment, the party asserting waiver of a contract term has the affirmative duty to produce evidence demonstrating the existence of an issue of fact concerning the voluntary relinquishment of a known right.

Further, "[i]mplied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Ryder v. Bank of Hickory Hills*, 146 Ill.2d 98, 165 Ill.Dec. 650, 585 N.E.2d 46, 49 (1991). "An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it." *Id.* (quoting *Kane v. American National Bank & Trust Co.*, 21 Ill.App.3d 1046, 316 N.E.2d 177, 182 (1974)).

In this case, plaintiff produced no evidence substantiating a waiver of the contract terms, by the conduct of the parties or otherwise. In its answers to interrogatories, plaintiff testified that before the archeological dig, "no one expected what we were about to uncover[;]" but that after the extent of the problem was revealed, "work came to a screeching halt." The plaintiff testified that "[a]s far as we were all concerned, we were stopped and the dates *are still being extended.*" (Emphasis added). However, later, when "Mr. D'Ambra was trying to dig for the sewer line, *again* we hit more burials. So on [August 18, 1994] the Town of Narragansett issued its Cease and Desist Order." (Emphasis added). Finally, in December 1994, the town "gave permission to put a temporary pump station in for the front lots" and construction resumed.

This Court has held over and over again that a party opposing summary judgment "bears the burden of proving the existence of a disputed material issue of fact and, in so doing, has an affirmative duty to produce specific evidence demonstrating that summary judgment should be denied." *Hudson v. City of Providence*, 830 A.2d 1105, 1106 (R.I.2003). A litigant facing summary judgment may not "rest upon mere allegations or denials in the pleadings, mere conclusions, or mere legal opinions[.]" *Rhode Island Depositors Economic Protection Corp. v. Tasca*, 729 A.2d 707, 709 (R.I.1999) (quoting *Rhode Island Depositors' Economic Protection Corp. v. NFD Co.*, 687 A.2d 452, 454 (R.I. 1997)).

The unexpressed understandings or privately held beliefs of a party to a contract, particularly its drafter, articu-

lated over ten years after its execution, are not relevant considerations and are insufficient to establish a waiver of a contractual provision. Although a contract is to be construed with reference to the intent of the parties, "[t]he intention sought is only that expressed in the instrument and *not some undisclosed intention that the parties may have had in mind.*" *Wayne Distributing Co. v. Schweppes U.S.A. Ltd.*, 116 R.I. 108, 111 n. 2, 352 A.2d 625, 627 n. 2 (1976) (quoting *Pawtucket Machinery & Supply Corp. v. Monroe*, 73 R.I. 162, 164–65, 54 A.2d 399, 400 (1947)).[5] Accordingly, in the absence of evidence demonstrating a waiver of the terms of the agreement requiring that modifications be in writing and a second waiver of the stop-work order or a cease-and-desist order requirement to delay the performance dates set forth in the contract (including the date for plaintiff to exercise its option rights), the beliefs and understandings of plaintiff are simply not enough.

In *Fracassa I*, 814 A.2d at 362, this Court noted that the closing date in a written agreement for the sale of real property providing that time is of the essence may be waived either by express agreement or impliedly by the conduct of the parties. Furthermore, a written agreement setting forth performance dates may be amended by the parties. *Id.* (citing *Berube v. Montgomery*, 463 A.2d 158, 160 (R.I.1983)). The party seeking to establish such an amendment bears the burden of proving that the original terms of

the contract did not expire and that the parties agreed to new terms. We remanded that case to the Superior Court; on the appeal after the remand, we upheld the finding of the trial justice that the parties' continued negotiations beyond the closing date effectively waived the mortgage commitment contingency in the original agreement, a condition for the benefit of plaintiff. *Fracassa v. Doris*, 876 A.2d 506, 510 (R.I.2005) (*Fracassa II*). Likewise, in *1800 Smith Street Associates, LP*, 888 A.2d at 54, we noted the ample evidence that supported the finding that defendant, the only party to have benefited from a 120–day financing condition precedent, waived that provision.

In the case at bar, by contrast, plaintiff has failed to produce any evidence tending to show that the parties waived the requirement for a stop-work order or the requirement that amendments be in writing. We are satisfied that plaintiff is essentially arguing for a rewrite of the terms of the contract that it drafted. We decline to do so.

The plaintiff also argues, in the alternative, that defendants should be equitably estopped from denying that HPC's October 1993 "request" that the parties stop work was not a stop order within the meaning of the agreement. "Under the doctrine of equitable estoppel, a party may be precluded from enforcing an otherwise legally enforceable right because of previous actions of that party." *Retirement Board of the Employees' Retirement Sys-*

---

5. Words have meaning, and unambiguous terms in signed contracts will be enforced as written unless enforcement is barred by a supervening principle of law or equity. Without such a presumption about the enforceability of contracts, we would live in a world in which contract terms would be hollow promises. ("This [C]ourt on innumerable occasions has stressed that the clear and unambiguous language in a written contract is con-

trolling as to the intent of the parties and thus governs the legal consequences of the contract provisions. The intent sought is not some undisclosed intent that might have existed in the minds of the contracting parties, but the intent which has been expressed by the language contained in the contract." *Lancellotti v. Lancellotti*, 119 R.I. 184, 198, 377 A.2d 1315, 1322 (1977)).

*tem of Rhode Island v. DiPrete*, 845 A.2d 270, 284 (R.I.2004). "[E]quitable estoppel is 'extraordinary' relief, which 'will not be applied unless the equities *clearly* [are] balanced in favor of the part[y] seeking relief.'" *Southex Exhibitions, Inc. v. Rhode Island Builders Association, Inc.*, 279 F.3d 94, 104 (1st Cir.2002) (applying Rhode Island law) (quoting *Greenwich Bay Yacht Basin Associates v. Brown*, 537 A.2d 988, 991 (R.I.1988)). This Court has stated that equitable estoppel will apply when there is:

"an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and * * *, that such representation or conduct in fact did induce the other to act or fail to act to his injury." *Southex Exhibitions, Inc.*, 279 F.3d at 104. (quoting *Providence Teachers Union v. Providence School Board*, 689 A.2d 388, 391–92 (R.I. 1997)).

Here, the plaintiff points to evidence that the defendants agreed "that a public sewerage system will be available to the property and in operating condition no later than October 31, 1993." The plaintiff argues that under the agreement's implied duty of good faith and fair dealing, the defendants' representation that the sewer system would be available no later than October 31, 1993, carried with it an implied obligation to proceed with the necessary work unless precluded from doing so by a stop-work order or a cease-and-desist order. The plaintiff contends that by stopping work, defendants intended to induce it into not timely exercising its option. This evidence does not constitute an affirmative representation or equivalent conduct that would induce the plaintiff into believing that the issuance a stop-work order no longer was an explicit contractual provision. Thus, the plaintiff's estoppel argument fails.

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court.