DECISION
Before this Court is an appeal from a unanimous decision of the Zoning Board for the Town of Narragansett ("the Board"). On January 19, 2006, the Board granted Ruth Mullen ("Mullen") a Special Use Permit under Narragansett Zoning Ordinance §§ 10.1 and 12.5, allowing her to raise the roof and add an internal dormer on one of four condominium units located at 10 Elizabeth Road, Narragansett, Rhode Island ("the Property"). Appellant John Haronian ("the Plaintiff"), a non-abutting neighbor of the Property, contends that (i) the Board's factual findings were not supported by the record; and (ii) its decision was affected by error of law as the Board erroneously determined that the property in question was a legally nonconforming lot. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I FACTS AND TRAVEL
The Property sits on approximately 3,600 square feet of land. (Tr. at 26.) It is located in a residential R-10 zoning district, which mandates 10,000 square feet for a single-family dwelling, and 20,000 square feet for a duplex.[1] See Narragansett Zoning Ordinance § 6.4. *Page 2 
In October 1947, the Property was constructed and used as a single-family dwelling, until around September 1968, when records indicate that the structure was converted into a duplex. (Tr. at 52-53.) At some point of time between 1968 and 1976, the building was transformed into a four-family condominium. (Tr. at 53-54.) The record is devoid of direct evidence of permits or approvals issued to effectuate the transformation from a single-family residence to a four-unit condominium. However, in September 24, 1999, a memo from the Town Building Official references unsubstantiated "research" done regarding the property which confirms the "legality" of the four-unit configuration. (Mullen Brief at 6-7.)
In April 1976, in response to a fire that destroyed the structure, the Town Inspector issued a building permit permitting the owners to rebuild a "legal non-conforming" four-unit condominium. (Tr. at 54.) The certificate of occupancy issued May 18, 1977 also stated that the structure was a "legal non-conforming four-family" dwelling unit, as do all later permits in the record. (Tr. 54-55.) Additionally, the 1971, 1981, and 1991 tax cards indicate that the Property is a four-family unit. (Mullen Brief at 6-7.) Finally, on August 26, 1998, and again on October 25, 1999, the Board granted the owners of the condominium units on the first floor of the Property special use permits pursuant to § 10.1 as an "expansion of a non-conforming use," so that a deck could be added to the structure. (Tr. at 15-16.)
Mullen purchased Unit #4 in the Property in March 1993. (Tr. at 8.) As indicated, prior to the time of purchase, the tax records and building permit history regarding the Property conclude that it was a legal, nonconforming four-unit building, but no evidence of the approvals leading to such conclusion were made of record at the hearing. In 2005, Mullen requested a *Page 3 
special use permit in order to (i) raise the roof of the entire structure close to the maximum 35 feet, (ii) add an interior dormer to the other condo unit on the top floor, (iii) add loft space to both top-floor units, and (iv) construct additional decking leading to the top floor. (Tr. at 10-15.) A public hearing on the petition was held on January 12, 2006, wherein Mullen and an expert witness real estate broker and appraiser, George Daglieri, were examined by the Board.
Mr. Daglieri testified that the use of the Property as a four-unit condominium was not anomalous in the neighborhood. (Tr. at 42.) He provided evidence that the proposed alterations would not injure the appropriate use of any of the surrounding properties, would not alter the general character of the neighborhood, and would have no impact on the public health, safety or welfare. (Tr. at 45-47.) He further testified that "nearly every parcel . . . in the neighborhood, both improved and unimproved, is nonconforming under present ordinances," including the approximately 6% of homes in the neighborhood that are multi-family. (Mullen Brief at 5, Tr. at 49.)
Although the Plaintiff did not present evidence to the Board that the issuance of a special use permit would have an impact on adjoining properties, he argued that the four-unit nature of the structure was an illegal use, and as such the Board lacked the authority to grant Mullen's requested special use permit. (Tr. at 51-52.) Nevertheless, at a second public hearing on January 12, 2006, the Board approved Mullen's application for a special use permit subject to new architectural drawing and limiting her request to the dormer and a total height increase of 32 feet, so as to ensure that no additional bedrooms were created. (Tr. at 12.) This vote was reduced to a written decision dated January 30, 2006, and recorded in the Land Evidence Records of the Town of Narragansett on February 1, 2006, in Book 647 at page 882. (Complaint at 2.) *Page 4 
The Plaintiff appeals the decision of the Board, maintaining that (i) no evidence was produced at either hearing demonstrating that the Property was a legal non-conforming use, and (ii) no evidence was presented in support of the standards required under § 12.5. Plaintiff seeks to prohibit the height increase of the structure, but does not seek to invalidate the present use of the Property as a four-unit condominium.
 II STANDARD OF REVIEW
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d), which provides that:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina College v. ZoningBd. of Review of City of Newport, 594 A.2d 878, 880 (R.I. 1991) (quotingDeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979)). Rhode Island law defines "substantial evidence" as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more *Page 5 
than a scintilla but less than a preponderance." Lischio v. Zoning Bd.of Review of North Kingston, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647
(R.I. 1981)).
In conducting its review, the trial justice "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v. Church Community HousingCorp., 672 A.2d 453, 454 (R.I. 1996) (quoting § 45-24-69(d)). This deference is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matter which are related to an effective administration of the zoning ordinance." Montfore v. ZoningBd. of Review of East Providence, 93 R.I. 447, 449, 176 A.2d 726, 728
(1962). Nevertheless, an administrative decision may be vacated if it is clearly erroneous in view of the reliable, probative and substantial evidence contained in the whole record. Von Bernuth v. Zoning Bd. ofReview of Town of North Shoreham, 770 A.2d 396, 399 (R.I. 2001);see also Costa v. Registrar of Motor Vehicles, 543 A.2d 1307 (R.I. 1988); § 45-24-69(d).
 III ANALYSIS
"A nonconforming use is a particular use of property that does not conform to the zoning restrictions applicable to that property, but which use is protected because it existed lawfully before the effective date of the enactment of the zoning restrictions and has continued unabated since then." RICO Corp. v. Town of Exeter, 787 A.2d 1136, 1144
(R.I. 2001) (citing Town of Scituate v. O'Rourke, 103 R.I. 499, 503,239 A.2d 176, 179 (1968)) (further citations omitted). "For a nonconforming use to be sanctioned, it must be lawfully established prior to the implementation of the zoning restriction or regulation."O'Rourke, 103 R.I. at 504, 239 A.2d at 180 (emphasis added) (citing 8 McQuillin, Municipal Corporations (3d ed. rev.), § 25-186, pp. *Page 6 
483-84); See also G.L. 1956 § 45-24-31(49). "The burden of proving a nonconforming use is upon the person . . . asserting the nonconforming use. . . ." RICO Corp., 787 A.2d at 1144 (citing Town of Glocester v.Lucy Corp., 422 A.2d 918, 920 n. 2 (R.I. 1980)).[2]
In the present case, the Board determined the Property was a legal, nonconforming use based not on direct evidence of when the present use was lawfully established, but rather on anecdotal evidence submitted by Mullen that previous incarnations of the Board and other Town agencies had "declared" the Property to be a legal, nonconforming use. It is well-established in Rhode Island law that zoning boards lack the authority to declare whether an allegedly nonconforming use is legal or illegal. Olean v. Town of Lincoln, 220 A.2d 177, 178 (R.I. 1966) (such boards are only empowered to "hear appeals from the determinations of administrative officers made in the enforcement of the zoning laws and . . . may authorize deviations to or variations in the application of the terms of local zoning ordinances."). Only the Superior Court, pursuant to G.L. 1956 § 9-30-1, has the jurisdiction to make such declaratory judgments. Id.
In Olean, the town building inspector denied the property owners permission to erect a stage for their private ballet school because "the main use of the property was never established as a legal use by the zoning board. . . ."220 A.2d at 177. The zoning board upheld the denial, but soon thereafter granted the owners a special exception, in essence "pronouncing that the use was legally established and that the premises could continue to be used as it had been. . . ."Id. *Page 7 
at 178. On certiorari, the Supreme Court quashed the zoning board's decision, holding that the board "was clearly without jurisdiction" to act on the owner's special use petition. Id.
The current use of the Property as a four-unit residential dwelling does not conform, in numerous respects, to the current zoning restrictions. See, e.g., n1, infra. Moreover, Mullen failed to establish through competent evidence that the present use existed lawfully prior to the enactment of the zoning ordinance. Thus, under Olean, the Board lacks jurisdiction to simply declare this use "legal nonconforming" in order to consider the issuance of a special use permit.
Furthermore, the record is devoid of facts relative to the application of the doctrine of equitable estoppel. Under that doctrine "a party may be precluded from enforcing an otherwise legally enforceable right because of previous actions of that party." Sturbridge Home Builders,Inc. v. Downing Seaport, Inc., 890 A.2d 58, 66-67 (R.I. 2005) (citingRetirement Board of the Employees Retirement System of Rhode Island v.DiPrete, 845 A.2d 270, 284 (R.I. 2004)). Equitable relief is "extraordinary" for zoning cases and will not be granted except "in the rare instance where the equities are clearly balanced in favor of the party seeking relief." Greenwich Bay Yacht Basin Associates v.Brown, 537 A.2d 988, 991 (R.I. 1988). Equitable relief may be an appropriate remedy to estop a municipality where a property owner incurs substantial obligations in good faith reliance on actions or omissions of that municipality. See Shalvey v. Zoning Board of Review ofWarwick, 99 R.I. 692, 210 A.2d 589 (1965); A. Ferland Sons, Inc. v.Zoning Board of Review of East Providence, 105 R.I. 275, 251 A.2d 536
(1969). "The elements of equitable estoppel are: 1) good faith reliance; 2) on an act or omission of a municipality; 3) which induces a party to incur substantial obligations; 4) making it highly inequitable to enforce the zoning ordinance." 4 Rathkopf, The Law of Zoning andPlanning, 45.104 at 45-44 (1991). *Page 8 
Mullen purchased the condominium unit in March 1993. There is no evidence in the record that at the time of the purchase Mullen relied on representations by Town officials as to the status of the property as a legal nonconforming use. Furthermore, neither the Plaintiff nor the Town is opposing the current use of the property as a four-unit condominium. Plaintiff only argues that the Board lacks the jurisdiction to permit the enlargement, extension, or alteration of a nonconforming use without Mullen meeting her burden of establishing the legality of the current nonconforming use. On the record before this Court, Mullen, as applicant for a special use permit, has not met that burden. Although the evidence is undisputed that the proposed alterations otherwise meet the requirements of § 12.5 of the Narragansett Zoning Ordinance, Mullen's failure to establish the current use as legal nonconforming is legally fatal to her application.
 IV CONCLUSION
Accordingly, the decision of the Board is affected by error of law, and in excess of the authority and jurisdiction of the Board. For those reasons, the decision of the Board is reversed. The parties shall prepare an appropriate form of judgment.
[1] Pursuant to Narragansett Zoning Ordinance § 12.8(1), a multi-family unit such as the one at issue must "be located on a zoning lot or tract having a gross area of at least two (2) acres. "Additionally, the maximum lot coverage must not exceed 20 percent of the total lot area, the maximum height of the structure may not exceed 30 feet, and the minimum lot area per dwelling unit must meet or exceed 210,000 [sic.] square feet. See Narragansett Zoning Ordinance § 12.8(3), (5), and (9).
[2] "The reason for imposing such a heavy burden of proof needed to establish the existence of a nonconforming use is because `nonconforming uses are necessarily inconsistent with the land-use pattern established by an existing zoning scheme.'" RICO, 787 A.2d at 1144 (quotingToys "R" Us v. Silva, 676 N.E.2d 862, 865 (N.Y. 1996)). "`The law . . . generally views nonconforming uses as detrimental to a zoning scheme, and the overriding public policy of zoning . . . is aimed at their reasonable restriction and eventual elimination.'" Id. at 1144-1145 (quoting Toys "R" Us, 676 N.E.2d at 865). "Nonconforming uses are a thorn in the side of proper zoning and should not be perpetuated any longer than necessary." Id. (citing Inhabitants of Windham v.Sprague, 219 A.2d 548 (Me. 1966)).
 *Page 1