April 10, 2025

**Supreme Court**

No. 2023-345-Appeal.
(ND 23-100)

Congregation Shearith Israel  :

v.  :

Congregation Jeshuat Israel.  :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Congregation Shearith Israel  :

v.  :

Congregation Jeshuat Israel.  :

Present: Suttell, C.J., Goldberg, Robinson, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  Nestled amid Newport's narrow, winding streets and lying at the heart of this controversy is Touro Synagogue, the oldest active Synagogue in the United States.  Touro Synagogue is not only one of Rhode Island's most cherished historical edifices, it is an enduring emblem of the principles established by Roger Williams of religious freedom and liberty of conscience.[1]  The case before us concerns the efforts of the plaintiff, Congregation Shearith Israel (Shearith Israel), to evict the defendant, Congregation Jeshuat Israel (Jeshuat Israel), from the Synagogue.

---

[1] Each year, George Washington's letter to the Newport Hebrew Congregation is read in the Touro Synagogue.  Washington was responding to a letter from Moses Seixas, warden of the congregation.  Echoing Seixas' words, Washington wrote that the government of the United States "gives to bigotry no sanction, to persecution no assistance * * *."

Jeshuat Israel appeals from a Superior Court judgment granting Shearith Israel the right to take immediate possession of the property located at 72 Touro Street in Newport, Rhode Island, including the Touro Synagogue building and all appurtenances and paraphernalia contained therein. Jeshuat Israel raises four arguments on appeal. First, Jeshuat Israel claims that the trial justice erred by ruling that Shearith Israel's termination notice was valid, asserting that the Superior Court did not have subject-matter jurisdiction over the dispute. Second, Jeshuat Israel asserts that the trial justice erred by ruling that a 1945 agreement among the parties and the United States Secretary of the Interior does not contain a condition precedent to the ejectment action at bar. Third, Jeshuat Israel argues that that the trial justice erred by ruling that the 1945 agreement did not modify the 1908 lease or the terms of Jeshuat Israel's holdover tenancy to include that condition precedent to ejectment. Fourth, Jeshuat Israel contends that the trial justice erred to the extent that she ruled that Jeshuat Israel waived its defense that Shearith Israel failed to satisfy a condition precedent to eviction under the 1945 agreement. For the reasons set forth herein, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The background of this case involves a complex history that stretches back to the mid-eighteenth century, a time during which the Jewish population of Newport

acquired land and constructed Touro Synagogue. *Congregation Jeshuat Israel v. Congregation Shearith Israel*, 866 F.3d 53, 54-55 (1st Cir. 2017).[2]  Some years later, nearly all the Jews in Newport had left the area, the Synagogue closed, and moveable Synagogue property was given to Shearith Israel, a congregation located in New York. *Id.* at 55. Years after this, the number of Jews living in Newport swelled, allowing the Synagogue to reopen and prompting Shearith Israel to return the moveable Synagogue property to Newport. *Id.*  The Synagogue was once again shuttered in 1901, amid conflict between Shearith Israel and Jeshuat Israel. *Id.*  The Synagogue remained closed until

> "a group of the Newport Jews broke in and engaged in a limited occupation that lasted for another year, whereupon [Jeshuat Israel] and several individuals brought suit in equity against [Shearith Israel] in a Rhode Island court, claiming a right to the Synagogue and its lands.  [Shearith Israel] removed the case to federal district court, which in January 1903 sustained [Shearith Israel]'s demurrer and dismissed the case. *See David v. Levy*, 119 F. 799 (D.R.I. 1903)." *Id.*

In 1903 Shearith Israel and Jeshuat Israel elected to settle their quarrel over competing interests in the property by entering into a five-year lease that allowed Jeshuat Israel to have possession of Touro Synagogue as a tenant of Shearith Israel.

---

[2] In *Congregation Jeshuat Israel v. Congregation Shearith Israel*, 866 F.3d 53 (1st Cir. 2017), the United States Court of Appeals for the First Circuit provided a thorough history of the relationship between Shearith Israel and Jeshuat Israel regarding Touro Synagogue.  We turn to this case to provide context for our analysis of the issues in the case at bar.

After the term of that 1903 lease expired, Shearith Israel and Jeshuat Israel entered into a second five-year lease with the same terms. Upon the expiration of the 1908 lease, in 1913, Jeshuat Israel did not quit possession of Touro Synagogue, but rather became a holdover tenant. *Congregation Jeshuat Israel*, 866 F.3d at 55-56.

Over thirty years later, in an effort to better secure the preservation of Touro Synagogue and to give it the recognition as a national historical site that it deserved, Shearith Israel, Jeshuat Israel, and the Secretary of the Interior entered into an agreement (the 1945 agreement). In particular, the agreement provides that Jeshuat Israel, Shearith Israel, and "their respective successors and assigns" would "preserve, protect, maintain, and, when necessary, restore, so far as lies within their power, the Touro Synagogue, Newport, Rhode Island, and the grounds immediately about the Synagogue building * * *." At the root of the issues in the case before us is the following provision:

> "[I]t is the purpose of all parties to this [a]greement to preserve the integrity of the said Touro Synagogue, Newport, Rhode Island, and to further public appreciation of the full importance of our great national heritage in historic sites by insuring to the Touro Synagogue, Newport, Rhode Island, its rightful place in the national program of historical conservation, and to secure this result a high degree of cooperation is necessary, and the parties hereto shall mutually consult on all matters of importance to the program."

Specifically at issue is whether this clause modified the terms of the parties' lease so as to create a condition precedent that required Shearith Israel to consult with both Jeshuat Israel and the Secretary of the Interior before initiating an eviction action.

Indeed, the agreement does enumerate specific actions that require consultation with, and permission from the Secretary of the Interior, including: (1) "erect[ing], or permit[ting] to be erected, any building or buildings on any portion of the grounds * * * designated by the Secretary as part of the national historic site"; (2) installing "any monument, marker, tablet, or other memorial in or upon the said Touro Synagogue, or any portion of the grounds herein referred to, designated by the Secretary as part of the national historic site"; (3) making "structural alterations" or "substantial repairs affecting the appearance" of the Synagogue; and (4) undertaking the "decoration and furnishing of the interior of the building."

Sadly, Jeshuat Israel and Shearith Israel do not enjoy a harmonious relationship, leading to litigation in the federal courts seeking to resolve issues other than those which are before this Court. *See Congregation Jeshuat Israel v. Congregation Shearith Israel*, 186 F. Supp. 3d 158 (D.R.I. 2016), *rev'd*, 866 F.3d 53 (1st Cir. 2017); *Congregation Jeshuat Israel v. Congregation Shearith Israel*, 866 F.3d 53 (1st Cir. 2017).

Both parties have recognized, in their papers and through witness testimony at trial, that their relationship had "deteriorated." Eventually, Shearith Israel decided

that it would evict Jeshuat Israel from Touro Synagogue by sending a written notice of eviction to Jeshuat Israel, informing it that it must vacate the premises of Touro Synagogue by February 1, 2023. Jeshuat Israel has not vacated the premises.

On February 2, 2023, Shearith Israel filed in the Rhode Island District Court the instant action against Jeshuat Israel for trespass and for repossession by ejectment. In its complaint, Shearith Israel asserted that it owned the "real property known as the Touro Synagogue * * * together with the appurtenances and paraphernalia belonging thereto * * *." Shearith Israel further claimed that it entered into a second five-year lease agreement with Jeshuat Israel for Touro Synagogue that expired on January 31, 1913, and that, after that date, Jeshuat Israel became a holdover tenant. Additionally, Shearith Israel asserted that the United States Court of Appeals for the First Circuit had recently ruled that "[Shearith Israel] is fee owner of the Touro Synagogue building, appurtenances, fixtures, and associate[d] land[.]" *See Congregation Jeshuat Israel*, 866 F.3d at 61.

Shearith Israel claimed that on October 21, 2022, it "sent [Jeshuat Israel] a [n]otice to [t]erminate [t]enancy by e-mail, U.S. mail, and Federal Express," demanding "that [Jeshuat Israel] quit the [p]remises by the end of February 1, 2023, which is the day following the end of the holdover lease term." As of the date that the complaint was filed, Shearith Israel maintained that Jeshuat Israel remained in possession of Touro Synagogue and the land, fixtures, and appurtenances thereto

- 6 -

(the property), "without permission to do so." This, according to its complaint, caused Shearith Israel to file this action for repossession and one count of trespass and ejectment. On March 8, 2023, the eviction proceeding was removed to the Superior Court by an order of the District Court.[3]

Subsequently, the parties filed pretrial memoranda and the case proceeded to trial on June 29, 2023. Thereafter, the parties submitted posttrial memoranda.

Before the Superior Court, Jeshuat Israel advanced several arguments in its posttrial memorandum. Specifically, Jeshuat Israel asserted that "[t]he [c]ourt lacks subject-matter jurisdiction over this trespass and ejectment matter unless Shearith Israel establishes that its October 21, 2022, notice of termination of tenancy * * * was 'valid and proper.'" (Quoting *Hedco, LTD v. Blanchette*, 763 A.2d 639, 643 (R.I. 2000).) Jeshuat Israel further argued that "Rhode Island termination-of-tenancy case-law requires 'strict compliance with notice requirements.'" (Quoting *Hedco*, 763 A.2d at 643.) Jeshuat Israel continued to rely on *Hedco*,

---

[3] The Attorney General sought to intervene in Superior Court, arguing that "[t]his proceeding involves 'a trustee who holds in trust within the state property given, devised, or bequeathed for charitable, educational, or religious purposes, and who administers or is under a duty to administer the property in whole or in part for these purposes within the state' and therefore the Attorney General 'shall be deemed to be an interested party to the judicial proceedings.'" (Quoting G.L. 1956 § 18-9-5.) The trial justice denied the Attorney General's motion to intervene as of right and granted the Attorney General's motion to intervene permissively. We note that the question of whether or not the property is held in trust is not at issue before this Court and will not be addressed further. Accordingly, the Attorney General, on April 18, 2024, filed with this Court a notice of intent not to file any position on this appeal.

contending, "[a]s the Rhode Island Supreme Court stated * * * 'we have determined a notice to be fatally defective * * * when it did not clearly indicate that an agent was acting on behalf of the landlord.'" (Quoting *Hedco*, 763 A.2d at 642 (citing *Tate v. Peter Charles Reynolds, Inc.*, 622 A.2d 449, 450 (R.I. 1993)).) Jeshuat Israel claimed that the notice to terminate tenancy was not valid and proper, therefore stripping the Superior Court of subject-matter jurisdiction over the claim, because the notice did not state the capacity in which the author of the notice—Louis Solomon—was writing. Jeshuat Israel argued that this caused the notice to be defective, because *Tate* requires it to "clearly indicate that an agent was acting on behalf of the landlord." (Quoting *Hedco*, 763 A.2d at 642 (citing *Tate*, 622 A.2d at 450).) Furthermore, Jeshuat Israel asserted that Mr. Solomon testified that "[he] didn't make any explicit statement about the capacity in which [he] was writing" and that that "admission is fatal to Shearith Israel's case" as it proves a lack of strict compliance with notice requirements.

Jeshuat Israel also argued that Shearith Israel cannot evict Jeshuat Israel because Shearith Israel failed to satisfy a condition precedent to its lease agreement. Jeshuat Israel asserted that the 1945 agreement by Jeshuat Israel, Shearith Israel, and the Secretary of the Interior modified the holdover lease by creating a requirement that Shearith Israel "consult with the Secretary of the Interior *before* undertaking 'matters of importance' to the 'program of historical conservation' of Touro

Synagogue." Jeshuat Israel contends that this eviction proceeding constitutes a matter of importance to the preservation of the Synagogue and, therefore, required consultation with the Secretary of the Interior before such an action could be brought. This failure, argued Jeshuat Israel, should have precluded Shearith Israel from being able to bring this eviction action.

Shearith Israel also brought several arguments before the Superior Court. Shearith Israel argued that it proved a prima facie case for eviction "by proving (1) [its] title and (2) possession in the defendant." (Internal quotation marks omitted.) Shearith Israel continued to assert that the First Circuit affirmed Shearith Israel's title in a previous opinion. Furthermore, Shearith Israel asserted that Jeshuat Israel was in unlawful possession of the property since Shearith Israel "served [Jeshuat Israel] with a [n]otice of [t]ermination."

Additionally, Shearith Israel argued that it followed proper procedure in evicting Jeshuat Israel. At trial, Jeshuat Israel attempted to raise a defense that Mr. Solomon needed to include his title of Parnas (President) of Shearith Israel on the notice. In response Shearith Israel argued: "[(1)] [Jeshuat Israel] was well aware of his title * * *, [(2)] the [n]otice was on Shearith Israel letterhead, and [(3)] the [n]otice stated that Shearith Israel is 'owner and landlord' of Touro Synagogue * * *." Shearith Israel further asserted that it followed the statutory requirements of

a notice of termination, because "[t]he pertinent statutes require only 'notice in writing from the landlord.'" (Quoting G.L. 1956 § 34-18.1-2.)

Furthermore, before the Superior Court, Shearith Israel argued that "[t]he 1945 agreement did not modify the lease terms" and did not "impose a condition precedent" that would require the parties to consult with the Secretary of the Interior before Shearith Israel could initiate an eviction action against Jeshuat Israel.

Following the submission of posttrial memoranda and final closing arguments, the trial justice issued a bench decision in favor of Shearith Israel. The trial justice began her decision with an overview of the procedural history of the case and the arguments presented at trial. The trial justice then turned to the first argument presented by Jeshuat Israel—that the Superior Court lacked subject-matter jurisdiction over this action because the lease termination notice was defective. Ultimately, the trial justice held that Jeshuat Israel "fail[ed] in its attempt to challenge the notice for a few reasons." After her analysis of the notice arguments, the trial justice addressed the arguments concerning the 1945 agreement and whether that agreement modified the lease agreement between Shearith Israel and Jeshuat Israel to create a condition precedent.

The trial justice decided that "[she did not] view this 1945 agreement as modifying the 1908 lease to include a condition precedent before a termination of the tenancy could be undertaken." The trial justice went on to rule that the 1945

agreement required Jeshuat Israel and Shearith Israel to consult with each other, and the Secretary of the Interior, should they take any actions to renovate or restore the buildings and grounds at Touro Synagogue.

Finally, the trial justice found in favor of Shearith Israel as to its ownership and right to immediately possess Touro Synagogue. Judgment to that effect entered on September 14, 2023, along with an order granting a stay of execution on the judgment pending appeal. This appeal followed.

## II

### Discussion

Jeshuat Israel raises four arguments on appeal. First, Jeshuat Israel claims that the trial justice erred by ruling that Shearith Israel's termination notice was valid, asserting that the Superior Court did not have subject-matter jurisdiction over the dispute. Second, Jeshuat Israel asserts that the trial justice erred by ruling that the 1945 agreement among the parties does not contain a condition precedent to the ejectment action at bar. Third, Jeshuat Israel argues that that the trial justice erred by ruling that the 1945 agreement did not modify the 1908 lease or the terms of Jeshuat Israel's holdover tenancy to include that condition precedent to ejectment. Fourth, Jeshuat Israel contends that the trial justice erred to the extent that she ruled that Jeshuat Israel waived its defense that Shearith Israel failed to satisfy a condition precedent to eviction under the 1945 agreement.

- 11 -

**Subject-Matter Jurisdiction**

We begin by analyzing Jeshuat Israel's claim that the Superior Court lacked subject-matter jurisdiction over the eviction proceeding due to deficient notice.

Jeshuat Israel maintains on appeal that Shearith Israel's notice was not "valid and proper" and that it was not in "strict compliance with notice requirements." (Quoting *Hedco*, 763 A.2d at 643.) Additionally, Jeshuat Israel argues that "Shearith Israel's purported termination notice is defective under *Tate v. Peter Charles Reynolds, Inc.*, 622 A.2d 449 (R.I. 1993), because the notice did not explicitly state in what capacity its author, Louis M. Solomon, was writing." Jeshuat Israel continues to argue that, under *Tate*, Mr. Solomon was required to specifically state the capacity in which he was sending the notice of termination of tenancy. Furthermore, Jeshuat Israel asserts that the "notice was signed 'Louis M. Solomon,' but did not indicate in what capacity Mr. Solomon had sent the letter." This, according to Jeshuat Israel, renders the notice of termination of tenancy deficient, stripping the Superior Court of subject-matter jurisdiction over the proceeding.

In response to this argument, Shearith Israel asserts that, in order "[t]o terminate a commercial lease, 'notice in writing from the landlord' must be given. *See* § 34-18.1-2 (tenants at will or by sufferance); § 34-18.1-4 (tenants by parol from year to year)." Shearith Israel further argues that

> "there is no question that the [n]otice was 'in writing from the landlord.' The [n]otice was on Shearith Israel's own

- 12 -

letterhead, containing Shearith Israel's name, address, and contact information; and the text of the letter said that it was sent 'on behalf of Congregation Shearith Israel,' the 'owner and landlord' of the subject premises * * *. There is no other requirement with respect to capacity."

The trial justice found that "[t]he capacity in which Mr. Solomon was sending the notice to [Jeshuat Israel] * * * is abundantly clear." The trial justice explained that "the parties are familiar with each other and knew exactly what Mr. Solomon's role is or was and in what capacity he was sending the [notice]. It literally * * * states * * * '[o]n behalf of [Shearith Israel],' who it later states 'is owner and landlord of the Touro Synagogue.'" This led the trial justice to conclude that "[t]here could be absolutely no confusion in [Jeshuat Israel]'s * * * collective mind just who was seeking to terminate the lease and in what capacity he was doing so." In addition, the trial justice distinguished *Tate* from the facts of this case. She explained that

> "the *Tate* case dealt with a situation wherein the original notice to quit was determined to be facially defective because it did not indicate that an agent was acting on behalf of the landlord * * * and that's not the case here. Mr. Solomon indicated that he was acting on behalf of [Shearith Israel]."

We agree. It is clear that the trial justice made a decision based upon the facts before her regarding the notice letter that was sent from Shearith Israel to Jeshuat Israel, and we perceive no error in her reasoning or determination. Indeed, the notice of

- 13 -

termination that was delivered was clearly sent on behalf of Shearith Israel and, therefore, does not render the notice deficient.

Accordingly, the trial justice was correct in determining that the Superior Court has subject-matter jurisdiction over this action.

## Condition Precedent

"A judgment in a nonjury case will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Quillen v. Cox*, 306 A.3d 1040, 1045 (R.I. 2024) (quoting *Boisse v. Miller*, 267 A.3d 634, 636 (R.I. 2022)). "Upon review," this Court accords "the factual findings of a trial justice sitting without a jury great deference and consider[s] questions of law *de novo*." *Id.* (quoting *Boisse*, 267 A.3d at 636).

Indeed, the question of "[w]hether or not 'the terms of a contract are ambiguous is a question of law.'" *America Condominium Association, Inc. v. Mardo*, 270 A.3d 612, 624 (R.I. 2022) (quoting *Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.*, 890 A.2d 58, 62 (R.I. 2005)). "Accordingly, we review a trial justice's interpretation of a contract *de novo*." *Atmed Treatment Center, Inc. v. Travelers Indemnity Company*, 285 A.3d 352, 360 (R.I. 2022) (quoting *Bacon Construction Co., Inc. v. Arbella Protection Insurance Company, Inc.*, 208 A.3d 595, 599 (R.I. 2019)).

- 14 -

The second set of arguments in this appeal all stem from the 1945 agreement. Before this Court, Jeshuat Israel advances several arguments regarding the 1945 agreement: (1) "Jeshuat Israel's eviction from Touro Synagogue is a 'matter of importance to the program' of historic preservation that, under the 1945 [a]greement, requires prior consultation"; (2) "[t]he 1945 [a]greement modified the holdover tenancy"; (3) "Shearith Israel's post-trial assertion of a pleading defect is not an alternative ground for affirmance"; and (4) "[t]he 2017 decision of the First Circuit Court of Appeals does not preclude reliance on the 1945 [a]greement."

Similarly, Shearith Israel presents several arguments relating to the 1945 agreement: (1) "[t]he Superior Court correctly found that the 1945 agreement did not modify the lease"; (2) "[t]he Superior Court correctly found that the 1945 agreement did not impose a condition precedent on Shearith Israel's right to evict [Jeshuat Israel]"; and (3) "[Jeshuat Israel] is precluded from raising any modification or condition precedent defense."

The dispositive question presented on appeal is whether the 1945 agreement obligated Shearith Israel to consult with the parties to said agreement before evicting its holdover tenant, Jeshuat Israel. Therefore, we need only address the arguments related to the 1945 agreement. Before this Court, Jeshuat Israel argues that the 1945 agreement modified the holdover tenancy to require Shearith Israel to first consult with Jeshuat Israel and the Secretary of the Interior prior to evicting Jeshuat Israel.

- 15 -

Specifically, Jeshuat Israel first asserts that Shearith Israel and Jeshuat Israel "modified their 1908 lease when, in the 1945 [a]greement, they explicitly agreed to undertake additional obligations to one another, and to the Secretary of the Interior, concerning Touro Synagogue." Jeshuat Israel further argues that parties are free to modify the terms of a lease through a subsequent agreement. Jeshuat Israel then contends that Jeshuat Israel and Shearith Israel did this through the 1945 agreement, because, Jeshuat Israel asserts, the parties entered into the 1945 agreement in their respective capacities as lessor and lessee. This, Jeshuat Israel submits, is how the 1945 agreement created new obligations for Jeshuat Israel and Shearith Israel in their individual roles as landlord and tenant. Jeshuat Israel claims that one such new obligation is "the parties' duty to consult with each other and the Secretary of the Interior on matters of importance to Touro Synagogue's preservation program * * *." According to Jeshuat Israel, this constitutes a modification of the lease creating a condition precedent because the terms of the 1908 lease agreement controlling the holdover tenancy relationship between Jeshuat Israel and Shearith Israel did not contain any consultation obligation.

Second, Jeshuat Israel argues that its eviction would constitute "such a matter of importance," therefore requiring prior consultation to satisfy the condition precedent. Jeshuat Israel asserts that the trial justice erred in finding that "matters

- 16 -

of importance" requiring prior consultation under the 1945 agreement are limited to buildings-and-grounds matters.

In response, Shearith Israel argues that the 1945 agreement did not modify the lease agreement to create a condition precedent to be satisfied before Shearith Israel could evict Jeshuat Israel from Touro Synagogue. Shearith Israel contends that "the 1945 [a]greement states that Shearith Israel and [Jeshuat Israel] agree that 'in carrying out the provisions of this [a]greement, their obligations shall be performed in accordance with and subject to their respective rights and obligations as lessor and lessee as heretofore established.'" According to Shearith Israel,

> "the use of the phrases 'in accordance with' and 'subject to' signify that the [l]ease was not modified or otherwise limited by the 1945 [a]greement. The phrase 'subject to' means that the [l]ease controls and limits the 1945 [a]greement as between [Jeshuat Israel] and Shearith Israel; it means that the 1945 [a]greement is subordinate to the [l]ease."

Shearith Israel further claims that, if this Court agrees with their argument "that the 1945 [a]greement did not modify the [l]ease, then it need not determine" whether a condition precedent is created therein.

In her bench decision, the trial justice ultimately found that she "[does not] view this 1945 agreement as modifying the 1908 lease to include a condition precedent before a termination of the tenancy could be undertaken." Rather, the trial justice decided that the 1945 agreement "requires either party, taking action relative

to the restoration or renovation of the grounds or buildings * * * to consult each other as well as the Secretary of the Interior." As discussed *supra*, this Court "review[s] a trial justice's interpretation of a contract *de novo*." *Atmed Treatment Center, Inc.*, 285 A.3d at 360 (quoting *Bacon Construction Co., Inc.*, 208 A.3d at 599).

Accordingly, the issue before this Court is whether the 1945 agreement modified the lease between Jeshuat Israel and Shearith Israel to include a condition precedent to an eviction action. At the heart of that issue is the question of what is meant by the phrase "the parties hereto shall mutually consult on all matters of importance to the program." In particular, this Court need only decide whether an eviction action is part of the "program" contemplated by the 1945 agreement, and, if so, whether the agreement created a condition precedent requiring consultation before such an action.

"In determining whether or not a particular contract is ambiguous, the court should read the contract in its entirety, giving words their plain, ordinary, and usual meaning." *Haviland v. Simmons*, 45 A.3d 1246, 1258 (R.I. 2012) (quoting *Young v. Warwick Rollermagic Skating Center, Inc.*, 973 A.2d 553, 558 (R.I. 2009)).

We now turn to the potential ambiguity found in the 1945 agreement due to the term "program." Although the 1945 agreement provides no definition for the term "program," the document refers to "the national program of historical

- 18 -

conservation" in a section that sets forth the purpose of the agreement. The agreement further provides that Shearith Israel and Jeshuat Israel agree to "preserve, protect, maintain, and, when necessary, restore, so far as lies within their power, the Touro Synagogue, Newport, Rhode Island, and the grounds immediately about the Synagogue building * * *." The agreement continues to focus on only the preservation and maintenance of the Synagogue building and grounds for the benefit of the public as a historical site and a place for worship. Additionally, the agreement states that it is the shared desire of Shearith Israel and Jeshuat Israel to

> "promote the designation of the said Touro Synagogue as a national historic site and to preserve, protect, and maintain it in perpetuity for all necessary and desirable public and religious purposes, for the inspiration and benefit of the people of the United States, and particularly to continue to foster on the part of the people of the [n]ation, through visits to this shrine, a sincere devotion to the United States and to the principles of religious freedom for which it stands, and for the perpetuation of this country's architectural and cultural heritage[.]"

There is no doubt that the "program" contemplated by the 1945 agreement is the preservation of the Touro Synagogue building and grounds as a historic national site for the benefit of the nation's cultural fabric, and a place for worship. When read with this contextual framework, the word "program" within the phrase "the parties hereto shall mutually consult on all matters of importance to the program" means that the parties must consult with each other on matters pertaining to the conservation and preservation of the Touro Synagogue building and grounds as a national historic

- 19 -

site, so that it may continue to be held open to the public as a cultural and historical resource and for worship.

Accordingly, keeping Jeshuat Israel on as a holdover tenant does not constitute a "matter[] of importance to the program." Therefore, we agree with the trial justice that the 1945 agreement did not modify the lease between Shearith Israel and Jeshuat Israel, but rather "it requires either party, taking action relative to the restoration or renovation of the grounds or buildings * * * to consult each other as well as the Secretary of the Interior." We therefore hold that the 1945 agreement did not modify the holdover tenancy to create a condition precedent requiring that Shearith Israel consult Jeshuat Israel before initiating eviction proceedings, as such an action does not fall within the scope of the program of historical preservation and conservation.

Furthermore, the 1945 agreement contains clauses that require Shearith Israel and Jeshuat Israel to obtain written permission from the Secretary of the Interior before undertaking specific actions, such as constructing new buildings on the grounds and altering the structure or appearance of the Synagogue through repairs. The agreement also contains clauses that require the parties to consult with the National Park Service (a bureau of the Department of the Interior) before undertaking other specific actions such as placing a marker or monument in the Synagogue or on the grounds and decorating and furnishing the interior of the

Synagogue. These are specific actions within the scope of the "program" that require consultation among the parties to the 1945 agreement. They do not include evicting Jeshuat Israel as a tenant. From the language found in these clauses, it is apparent that Shearith Israel, Jeshuat Israel, and the Secretary of the Interior considered when specifically they must consult one another, but elected not to include the eviction of the lessee occupying Touro Synagogue as such an event. It may be that these terms of the 1945 agreement create conditions precedent to actions being taken that affect the "program" of conservation at Touro Synagogue, but the terms do not modify the terms of the lease agreement between Shearith Israel and Jeshuat Israel, or their relationship as lessor and lessee in any way. It is clear that these terms seek to protect Touro Synagogue as a historic site and require collaboration among the parties before the Synagogue building or grounds are altered, but the terms do not reach back to modify any of the terms of the lease agreement.

Because the 1945 agreement did not modify the lease, the only question before the Superior Court was whether the elements required for ejectment were satisfied. As the trial justice explained, Shearith Israel need only prove "that [Shearith Israel] has title or ownership to the property and that the property is in possession of [Jeshuat Israel]." The trial justice went on to explain that Shearith Israel's ownership of Touro Synagogue and Jeshuat Israel's status as a holdover lessee were clearly recognized in the First Circuit Court of Appeals decision in *Congregation Jeshuat*

*Israel*, 866 F.3d at 61-62.  With respect to Jeshuat Israel's possession of Touro Synagogue, the trial justice found that "it's undisputed that [Jeshuat Israel] has not vacated the property[;] * * * [they are] still in possession."  We discern no reason to disturb her factual findings.

Accordingly, our review of the record reveals that the trial justice did not err in entering judgment in favor of Shearith Israel, granting it "the right to take immediate possession of the [p]remises * * * together with the appurtenances and paraphernalia belonging thereto in accordance with the 1903 and 1908 leases."

## III

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court.  The papers in this case may be remanded to that tribunal.

Justice Lynch Prata did not participate.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Congregation Shearith Israel v. Congregation Jeshuat Israel. |
| **Case Number** | No. 2023-345-Appeal.<br>(ND 23-100) |
| **Date Opinion Filed** | April 10, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Mitchell R. Edwards, Esq. |
| | For Defendant:<br><br>Jonathan M. Wagner, Esq. *Pro Hac Vice*<br>Lauren E. Jones, Esq. |